# CHARLESTON

H̱ULINGS *v.* JONES *et al.*

Submitted February 25, 1908.    Decided March 3, 1908.

1. PARTNERSHIP—*Action Between Partners—Jurisdiction.*

The circuit court of the county in which partnership property is located and one of the partners is found has jurisdiction, at the suit of the other partner, to wind up 'the partnership and administer its assets, although the parties to the suit may be nonresidents of the state.   (p. 702.)

2. SAME—*Property Employed on Navigable Waters—Admiralty Court.*

A court of admiralty has no jurisdiction to determine the equitable title or conflicting claims to such partnership property, although it consists of a steamboat and attendant barges employed in commerce upon navigable waters of the United States. (p. 702.)

3. SAME.

Such circuit court is not without jurisdiction, in a suit to wind up the business relating to such property, to adjudicate a claim for damages against the firm, although such claim may arise out of a maritime contract, when such adjudication is a necessary incident to winding up the partnership business. (p. 702.)

4. COSTS—*Security for Payment—Waiver.*

Where in such suit the plaintiff's nonresidence is suggested and security for costs demanded, but the case proceeds without such security being given or objection by the defendant, the demand for such security is presumed to have been waived.   (p. 703.)

-5. RECEIVERS—*Effect of Appointment on Vested Rights.*

It is a general rule that the appointment of a receiver does not effect vested rights or interests of third persons in the property which is the subject of the receivership, or disarrange the order of priority of existing liens—particularly when the lienors have not been made parties to the suit, nor intervened or asked any relief therein.   (p. 705.)

6. SAME—*Expenses of Receivership—Priority of Lien.*

But if the receivership is necessary to preserve the property from destruction and waste in order to conserve the interests of those who may succeed in establishing their superior right of title, such property is first liable for the receivership expenses, including the allowance to the receiver for his services.   (p. 706.)

7. WRIT OF ERROR—*Review—Accounts of Receiver.*

Where in such suit the accounts of the receiver have been audited by a commissioner and allowed by the court, and the disbursements and expenses of the receiver are supported by evidence, this Court will not interfere therewith, unless it clearly appears the discretion of the court below has been abused. (p. 707.)

8. RECEIVERS—*Accounting—Services of Counsel.*

Where the services of counsel are required by such receiver, such counsel may be retained by him without previous authority from the court, and their fees, when allowed by the court, constitute part of the receivership expenses, to be paid prior to other liens upon the property. (p. 707.)

9. SAME—*Improvements.*

Where one whose title to personal property is being litigated in a pending suit obtains possession thereof upon order of another court, and voluntarily makes improvements thereon, he will not, as a general rule, upon restoring such property to the hands of the receiver, be allowed compensation for such improvements. (p. 708.)

Appeal from Circuit Court, Wood County.

Bill by H. B. Hulings against George F. Jones and another. From the decree, defendants appeal.

*Affirmed.*

L. R. VIA, for appellants.

J. W. VANDERVORT, and REESE BLIZZABD, for appellees.

MILLER, JUDGE:

The circuit court of Wood county, January 18, 1905, upon bill filed by H. B. Hulings against George F. Jones, his partner, and one O'Hara Darlington, representing that there was great danger of loss and destruction thereof, appointed C. D. Dotson special receiver of all the property of said partnership, including the steamer Clifton with its attendant barges. By the order of his appointment, said receiver was authorized to carry out the several contracts of carriage referred to in the bill, after entering into bond in the penalty of $15,000, which bond was given, and the receiver took charge of the property accordingly. Hulings, Jones and Darlington were citizens and residents of Pennsylvania. The

bill and the contracts exhibited therewith show that on August 18, 1904, through Darlington, Hulings & Jones purchased in Pennsylvania the steamboat Clifton, the legal title thereto and the insurance thereon being taken in the name of Darlington, who advanced to them $4,000 for the purchase, to be repaid in three years in quarterly installments with interest, when the legal title to said steamboat and all papers relating thereto were to be turned over to Hulings & Jones, to whom Darlington leased said steamer for said three years at an annual rental of one dollar; that the agreement of partnership between Hulings and Jones, made at same time but not reduced to writing until December 19, 1904, after referring to the contract with Darlington, among other things provided that the parties thereto thereby agreed to associate themselves together for mutual profit in the business of transporting freight and passengers to and from various points on the Alleghany, Monongahela and Ohio rivers, the partnership to continue during the life of the parties thereto or until terminated by sixty days' notice by the one so desiring of his intention to withdraw therefrom, said contract also providing for division of losses and profits, and that "when the legal title to the steamboat Clifton or any surplus of insurance money is turned over to the parties hereto by O'Hara Darlington said steamboat and papers or surplus of insurance money shall be part of the copartnership assets if the copartnership is then in existence, but if not they shall belong to the parties hereto as tenants in common;" that at the time of making said partnership agreement certain contracts of affreightment had been entered into by said firm—the most important with the Holcomb-Lobb Company for transportation of 210,000 cross-ties, another relating to towing of certain barges from Pittsburgh to Paducah, Ky.—which the bill alleged were profitable contracts and to reap the profit therefrom promptness was necessary; that, in the execution of the last mentioned contract, the plaintiff, who had been made master and put in charge of said vessel, left Pittsburg bound for Paducah late in December, 1904, and proceeded with his tow as far as Parkersburg, where, on account of the ice in the river, he was compelled to tie up until navigation should again open; that, after reaching Parkersburg, he received letters from

his partner Jones and from Darlington—the first notifying him of default by the firm in payment of interest to Darlington on said $4,000, and that, as Darlington had given notice that he considered his agreement with the firm cancelled and of his intention to seize the Clifton, he had taken it upon himself to notify all with whom the firm had been doing business that the partnership relation had ceased— the latter, in reference to default in payment not of interest but of rent due under the lease contract, notifying him that the rights of the firm under the lease had been forfeited and to immediately vacate said steamboat. The bill also charged that the cause of action partly arose in Wood county, that the defendant Jones was then located within said county, and that the property in charge of the firm was also located within the jurisdiction of said Court. Process was duly executed upon Jones in Wood county, and an order of publication duly awarded, published and posted as to Darlington as a nonresident defendant. The prayer of the bill was for appointment of a receiver, carrying out of said contracts of carriage, settlement of the partnership accounts, dissolution and winding up of the partnership, and for an injunction.

On January 24, 1905, a petition was presented by the special receiver to the judge in vacation for authority to issue receiver's certificates or to borrow not exceeding $3500 to carry out the contracts and conduct the business of said partnership, and, notice of the motion therefor having been served upon Jones and Darlington, the latter appeared thereto and tendered their demurrer to the bill, and Darlington his plea to the jurisdiction. Upon argument the judge, being of opinion that he could not consider the plea or demurrer in vacation, refused to then act thereon, but, being of opinion that the bill presented a *prima facie* case ordered that the receiver be authorized to borrow said sum for the purpose stated, to be repaid out of funds coming into his hands by reason of said business.

Jones, March 30, 1905, filed his answer to the bill. While it contains charges of recrimination against Hulings of drunkenness, denies the profitableness of the contracts as alleged in the bill, and charges particularly that the contract for carrying cross-ties will be unprofitable and result in bank-

ruptcy to the firm and its individual members, yet there is no denial of the partnership agreement, nor of the fact that said contracts were entered into by said firm and that the notices were given Hulings by Jones and Darlington substantially as alleged in the bill.

In May, 1905, Darlington instituted a libel proceeding against Hulings and Jones in the District Court of the United States for the Northern District of West Virginia, to have adjudicated in a court of admiralty his right and title to the steamboat Clifton and its attendant property under his contract with them of August 18, 1904, and therein caused said property to be seized by the marshal of said district. The order of the court provided that said property should be placed by the marshal in the hands of said Dotson as special custodian thereof, which was done. On hearing in said district court, it was adjudged that the said libellant, by virtue of his said contract, had only an equitable mortgage on said property, not cognizable in a court of admirality, and this judgment was, upon writ of error obtained by Darlington, affirmed by the United States Circuit Court of Appeals; and the marshal of said district, in conformity with the order of the district court, was ordered to restore to the receiver said steamboat and paraphernalia, together with all funds in his hands arising from use thereof upon authority of orders entered in said proceeding, and the petition of said libellant was dismissed.

Darlington filed no answer to the bill until March 21, 1906, after the final adjudication against him in said federal court. In this answer he admits execution of the contract between himself and Hulings & Jones, avers ignorance of the contract of carriage by said firm, charges that in addition to said $4,000 he had advanced to said firm $16,000 to equip said steamer, and for such advancements had accepted the firm's notes. It is therein further averred that he is entitled to recover said $20,000 with interest, and that he "invokes the jurisdiction of this court to secure unto this respondent the payment of the said sums of money, or so much thereof as the properties belonging to the firm of Hulings & Jones, together with the accrued interest thereon, as may be realized by a sale of said properties;" and the prayer of said answer is that it may be

considered in a spirit of equity, and such general and specific relief granted him as to a court of equity may seem proper, and that he may recover said sums of money with interest and costs.

On March 30, 1906, on petition of the receiver, sale of the Clifton and her paraphernalia was decreed, without objection by any party to the suit. Pursuant to this decree said property was sold for $5,000 April 21, 1906, and said sale confirmed by decree of April 28, 1906.

Such being the state of the proceedings and the pleadings, the circuit court by decree of April 28, 1906, after confirming said sale of the steamer, by consent of all parties to the suit, referred the cause to commissioner A. G. Patton to ascertain, first, all property of said firm at the institution of the suit and since, its kind, character, disposition and value; second, all liens against the same, their kind, character and priority, the creditors of said firm and the nature and amounts of their debts; third, to settle the accounts of the receiver, ascertain a reasonable compensation for his services and those of his attorneys, and any other matter deemed necessary by the parties or the commissioner. After a large amount of depositions and proofs had been taken and filed before the commissioner upon the various matters committed to him, he made up and filed his report December 15, 1906, to which there were a number of exceptions filed by Hulings, by Dotson, special receiver, by Blizzard and Vandervort, his attorneys, by Darlington and Jones, and by the Holcomb-Lobb Company, all of which exceptions were by final decree of December 22, 1906, overruled and said report in all things confirmed.

Darlington and Jones alone have appealed, and in their petition assign some thirty three grounds of error, most of which are wholly without merit and have imposed a useless and unnecessary burden upon this Court. We will not undertake to consider them separately.

The jurisdiction of the court is challenged upon two grounds: first, that the plaintiff and defendants at the institution of the suit were all citizens of Pennsylvania, and the cause of action did not arise in Wood county; second that the contracts of partnership and of affreightment were all maritime contracts, cognizable only in a court of admiralty.

The first proposition is answered by the statute, section 1, chapter 123, Code, providing that "any action at law or suit in equity, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county,** if it be against a nonresident of the state, wherein he may be found or may have estates or debts due him." The bill, as we have seen, alleged the nonresidence of the de-- fendants; that Jones was within the county of Wood; and that the partnership property was located there. We do not know of course to what the plea to the jurisdiction, not shown by the record, related, except by inference from arguments here. On the question of the maritime character of the contracts, this point was by the federal court, as we have seen, adjudged against Darlington so far as his right under his contract there involved was concerned; and, upon the same principle, Hulings and Jones being only equitable owners of the steamer, an admiralty court would have no jurisdiction to try their rights. *The Eclipse*, 135 U. S. 599; *The Robert R. Kirkland,.* 92 Fed. 407. With respect to the contracts of affreightment, there is no pleading putting in issue any matter of law or fact relating to them. The contract of towage, which was being executed when the receiver was appointed, was fully executed by him,- and the money brought into court for distribution. The contract with the Holcomb-Lobb Company was never executed. It is true that company presented before the commissioner a claim for damages for breach thereof, and, being fully proven and no evidence being offered against it, it was allowed as a general debt against the firm under the order of reference. The allowance of this claim, like other general debts, was but a necessary incident in the closing up of the partnership businesss, of which a court of equity in the administration of partnership assets has complete jurisdiction. Besides this, after having pleaded want of jurisdiction, Darlington filed his answer and petition, as we have seen, in which he specifically invoked the jurisdiction of the court, thereby waiving the question of jurisdiction as to parties and the subject matter of the suit. Moreover, neither the demurrer nor the plea to the jurisdiction was ever in fact filed in court. They were tendered in vacation and noted as filed in the vacation order; but, never having been filed in

court, the court was not thereafter obliged of its own motion
to consider them.

Another error assigned is the failure of the court, after
suggestion of the nonresidence of the plaintiff, to dismiss the
bill on failure of the plaintiff to give security for costs. We
do not find this suggestion made upon the record otherwise
than by a paper copied into the record, signed by counsel
for Jones, suggesting the nonresidence of the plaintiff. But
if the suggestion had been made upon the record, as the
case thereafter proceeded without security being given or ob-
jection by the defendant, the demand for such security is pre-
sumed to have been waived. *Enos* v. *Stansbury*, 18 W. Va.
477. The requirement of security for costs under section 2,
chapter 138, Code, may be waived, and such waiver may be
presumed from defendant's conduct. *Dean* v. *Cannon*, 37
W. Va. 123.

As the order of reference was made by agreement of
counsel, and the commissioner appointed made up and filed
his report, which by decree was in all respects confirmed, we
see no other points of error deserving to be noticed except
those arising upon the exceptions of Darlington and Jones.
The matters reported by the commissioner to which these
exceptions relate are that the total receipts from the conduct
of the business and the sale of the partnership property by
the receiver amounted to $8,553.50, out of which he was
allowed by way of credits for actual disbursements for labor
and material, including employment of other steamers to
assist, $3,997.18, leaving a balance in the hands of the re-
ceiver of $4,356.32; that in addition to these credits the com-
missioner reported, as expenses incurred by the re-
ceiver which should be paid out of the funds in his hands,
first, the bills incurred as special receiver for labor and sup-
plies, aggregating $837.04; second, like bills incurred while
acting under order of the federal court, aggregating $472.94;
third, additional debts incurred by the receiver while acting
under the United States marshal, aggregating $228.90—
making $1,538.88; that the commissioner on the evidence
before him also allowed the receiver for his services $758,
and to Vandervort and Blizzard as his counsel $511.70 and
$125 respectively, which allowances, added to the indebted-
ness, incurred by the receiver, aggregate $2,933.58, to be

paid out of said balance in priority to all other liens or debts, leaving a balance of only $1,422.74 to apply upon the debt of Darlington under his contract of August 18, 1904, adjudged by the federal court to be an equitable mortgage, reported by said commissioners as the first lien upon said fund, subject to said receivership expenses and allowances.

There were several exceptions by Darlington and Jones to the commissioner's report.   The first is that, as the commissioner rightly reported and the court rightly agreed in confirmation thereof that Darlington's equitable mortgage constituted a specific lien on the partnership property, the same should have been protected against, and not subordinated to, the expenses incurred by the receiver; second, that the allowances to Vandervort and Blizzard for counsel fees in the case of Darlington against the steamer Clifton in admiralty should not have been allowed; third, that the allowance to the receiver of the claim of Hulings for labor performed for the receiver was improper; fourth, that the allowance of expenses incurred by the receiver while acting under the order of the admiralty court was improper.   The three last grounds of exception are involved in the first, and all depend for their solution upon the question whether, in a case like this, a specific lien by mortgage, on partnership property such as involved here, may be subordinated to expenses of the receivership. In the court below the Holcomb-Lobb Company, by exceptions to the commissioner's report, denied priority of Darlington's mortgage, as against general creditors of said firm, for want of registration under the federal admiralty law, and for want of recordation under state law.   The appellees also make this point against the validity and priority of the lien of Darlington.   But we do not think the point fairly arises.   The legal title to the property was in Darlington.   He was the registered owner of the vessel, and we think the commissioner rightly reported and the court rightly decreed his lien valid and entitled to priority over the claims of general creditors.

Will, then, this lien be protected against expenses incurred by the special receiver?   This Court has decided in *Seiler* v. *Manufacturing Co.*, 50 W. Va. 208, that, where stockholders and creditors of an insolvent corporation, other than a creditor by trust lien covering all the real estate of such cor-

poration, procure the appointment of a special receiver of its property, such trust lien will be protected against indebtedness created by such special receiver. And it is the general rule that the appointment of a receiver does not affect vested rights or interests of third persons in the property which is the subject of the receivership, or disarrange the order of priority of existing liens. *Karn* v. *Iron Co.*, 86 Va. 754; *Bank* v. *Textile Co.*, 104 Va. 34; *Makeel* v. *Hotchkiss*, 190 Ill. 311; Alderson on Receivers 831. But this general rule is not without exception. It was properly applied by this Court in the Seiler case, first, because the trust lien creditor was not a party to the suit, had not joined with the plaintiffs, or come in afterwards asking any relief; second, because the decree of sale of the property, being a consent decree, was only of the equity of redemption—that is, subject to the lien of the deed of trust creditor. It was held in that case that it was not proper nor within the power of the court, after the term at which this decree was entered had ended, to set it aside and direct sale of the property from liens, and subject the proceeds of the *corpus* to the expenses and liabilities of the receivership. One of the exceptions to the general rule, as firmly established as the rule itself, is that where a receiver is appointed at the instance and for the benefit of lien creditors, and charged with the duty of operating the property for their advantage, all proper charges, expenses and liabilities incurred incident to receivership are held to be a first charge not only on the current earnings but also on the *corpus* of the estate. *Miltenberger* v. *Logansport*, 106 U. S. 286; *Kneeland* v. *L. & T. Co.*, 136 U. S. 89; *Kneeland* v. *Luce*, 141 U. S. 491; *Cake* v. *Mohun*, 164 U. S. 311; *Makeel* v. *Hotchkiss, supra; Beckwith* v. *Carroll*, 56 Ala. 12; *Railroad Co.* v. *Thornton*, 105 Ala. 225. In the leading case of *Makeel* v. *Hotchkiss, supra*, the court did not regard it necessary to consider the extent of the power of a court of equity, when it takes possession by a receiver of property or business involved in litigation and carries on such, to make the expenses of the receivership a lien upon such property superior to prior liens. The exercise of that power in the case of operation of railroads and other property impressed with a public interest was referred to. But the court said:

"It seems also that the same doctrine has been applied in some cases to property of a different character, used in the business of private individuals or corporations, where the expenses of the receivership appeared to be necessary to preserve the property from destruction or waste and in conserving the interests of those who might succeed in establishing their superior right or title." For this latter view the Alabama, Virginia and Federal cases referred to above are cited and reviewed. The principle was not applied in that case, because the owner of the mortgage lien was not a party to the receivership suit and only the equity of redemption was involved, and by an independent suit the lien had been foreclosed by him. The pertinent suggestion was made in that case also that there had been no controversy in the receivership suit as to the mortgage lien, but only as to the ownership of the equity of redemption.

In the case at bar Darlington was made a party defendant, and although originally denying jurisdiction of the court, subsequently came in by answer and petition, invoking jurisdiction with prayer for special relief. The property was partnership property, necessarily involved in a suit to wind up and settle the partnership business. A receiver was absolutely necessary, under the circumstances shown, to care for and preserve the property, all subject to the dangers incident to navigation. Something also must be imputed to the knowledge by Darlington of the hazardous character of his contract, of the transient nature of the property, and of the uncertain enterprise upon which the partnership was about to embark. Jones and Darlington, by their conduct and their notices to Hulings, rendered dissolution of the partnership inevitable and necessary—a case particularly calling for interference of a court of equity and appointment of a receiver. *McMahon* v. *McClernan*, 10 W. Va. 419; *Wood* v. *Wood*, 50 W. Va. 570. In *Beckwith* v. *Carroll, supra*, it was held that "when it becomes the duty of a court of equity to take property under its own charge, through a a receiver, the property becomes properly chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services." In *Railroad Co.* v. *Thornton, supra*, it was decided that "a receiver who is appointed in a suit pending between the land-

lord and the lessee of a hotel and is given 'authority to con-
duct and run the hotel and for that purpose to make such
purchases as may be necessary,' no provisions being made by
the court for him to raise money, has implied authority to
purchase necessary supplies on credit; and the debt, being
properly proved under order of the court, constitutes a
proper charge, first on the income of the property, and then
on the estate itself."

The greater part of the expenses incurred by the receiver
in this case relate to the care and preservation of the *corpus*
of the property, to which alone Darlington could look for
satisfaction of his lien. A large portion of these expenses
accrued pending his litigation with Hulings and Jones in
the federal court. The receivership, as is too often the case,
proved disastrous to partners and creditors; but the court
was without power, except by the hand of its receiver, to
administer and conserve the property. The plaintiff sub-
stantially prevailed in the purposes of the suit. It appears
from the record he is insolvent; and, if the court could im-
pose costs upon him, it would be unavailing. If the court was
without power in such cases to charge the expenses of the
receivership on the property, the innocent officer of the
court would have to bear the loss. If such was the law of re-
ceivership, no one could be found willing to accept the import-
ant office. The amount of the receivership expenses and
charges, compared with the amount realized from the busi-
ness and from the proceeds of sale of the property, im-
presses us with the notion that many of the expenses were
unnecessarily incurred. The commissioner, realizing this,
disallowed many of the expense charges of the receiver,
scaled his claim for services about one third, and cut in two
the bills presented for counsel fees. The claim of the receiver
for services, and of his attorneys for counsel fees, as al-
lowed, were each supported by evidence before the
commissioner. The court below, in confirming his re-
port, regarded the allowances reasonable. We can not say
they were not so, and it is not our province therefore to
interfere. *Karn* v. *Iron Co.*, *sapra; Cake* v. *Mohun, supra;*
2 High on Receivers 729.

Connected with the exception to the allowance of counsel
fees, it is urged that employment of counsel by the receiver

was without leave or authority of the court. Where such services are required, counsel may be retained, and the assets in the hands of the receiver made liable for their fees when allowed by the court. Alderson on Receivers 833. Such allowances constitute part of the receivership expenses, to be paid in proper cases prior to the other liens upon the property. *Railroad Co.* v. *Wilson*, 138 U. S. 26.

Another exception relates to the allowance of the claim of the Holcomb-Lobb Company. As this claim can under no circumstances be reached by the fund for distribution, and as it was supported by proper evidence and no evidence was offered to the contrary, we think it was properly allowed by the commissioner and the final decree.

With respect to the allowance by the commissioner of the claim of Hulings, employed by the receiver, there seems to be no good reason why, if he rendered services as the record shows, his claim should not be paid, like that of any other servant, as a part of the receivership expenses. The services of some one were required.

Another point of error is the disallowance of Darlington's claim for improvements to the boat and barges while in his possession under order of the federal court. The commissioner reported adversely to this claim, on the ground that these improvements were voluntarily made without order or authority of the court, with full notice of the adverse claims of the partnership and the social creditors in litigation. Where under like circumstances improvements are made to real estate no allowance will be made therefor. *Davis* v. *Settle*, 43 W. Va, 17, 28, 41; *Keister* v. *Cubine*, 101 Va. 768. We see no reason why the same rule should not be applied in case of improvements to personal estate.

With this consideration of all meritorious points of error, we are of opinion to affirm the decree.

*Affirmed.*