## CHARLESTON.

KANAWHA NATIONAL BANK, *a corporation v.* BLUE RIDGE COAL CORPORATION, *a corporation*

(No. 6484)

Submitted May 15, 1929.    Decided May 29, 1929.

*Meldahl & Mauzy,* for appellant.

*Campbell & McClintic* and *Ernest K. James,* for one of appellees.

LITZ, JUDGE:

The appellant, Goodman Manufacturing Company, a corporation, complains of three several decrees of the Common Pleas Court of Kanawha county in this cause dated, September 17, 1926, July 31st and November 7, 1928, respectively.

The suit was instituted September 2, 1926, against the Blue Ridge Coal Corporation, a corporation, by some of its stockholders and unsecured creditors. The bill alleges that soon after its incorporation and organization, in the early part of 1925, the defendant acquired by assignment from Brush Creek Coal Company a developed coal mining leasehold in Boone county, West Virginia, in consideration of which the Blue Ridge Coal Corporation issued $85,000.00 of its capital stock to the Brush Creek Coal Company and assumed the payment of its indebtedness; that the defendant expended the proceeds from the sale, at par, of $118,400.00 of its capital stock further improving the leasehold premises and operated the mines thereon, at a loss, from February, 1925, to February, 1926, since which time they had been idle; that the defendant was unable to pay any of its indebtedness, amounting to $237,705.44; and praying for the appointment of a receiver to take charge of, preserve and administer the assets of the defendant, with authority to operate the mines "during such time as the same may be operated by him at a substantial profit, or until further order of the court"; and that the creditors of the defendant be enjoined from enforcing their claims. An order was entered upon presentation of the bill to the court, September 2, 1926, appointing L. B. Ramsey special receiver "to take charge of, preserve and administer the property and assets" of the defendant, and enjoining its creditors from enforcing their claims. Under authority subsequently conferred, the receiver operated the mines, at a loss, for a considerable period of time. An amended bill was filed at May Rules, 1927, making

462

the Brush Creek Coal Company and other new parties defendants, and praying for the dissolution of the Blue Ridge Coal Corporation and Brush Creek Coal Company and the administration of their assets. By decree of June 9, 1927, the cause was referred to James M. Mason, as a commissioner, to ascertain and report the assets and liabilities of the Blue Ridge Coal Corporation and Brush Creek Coal Company. A decree was entered August 11, 1927, accepting his resignation and appointing S. L. Flournoy, a commissioner of the court, to complete the reference. The liens existing at the institution of the suit against the personal and real property of the two corporations far exceeded the prices obtained at the sale thereof, in this cause, September 22, 1928.

The appellant presented its petition setting up a claim of $4,354.65 as balance of the purchase price for four Goodman mining machines sold by it to Blue Ridge Coal Corporation under a conditional sales contract reserving title to secure the payment of unpaid purchase money, and praying that it be permitted to repossess and sell the machines under the conditional sales contract or allowed compensation for their depreciation and deterioration while retained by the receiver. An order was entered September 17, 1926, filing the petition and denying relief thereon. February 25, 1928, the appellant tendered a second petition alleging that the mining machines had so depreciated while in the possession of the receiver, that full satisfaction of its claim could not then be realized, and praying that a special commissioner be appointed to sell them and apply the proceeds to the unpaid purchase price. An order was entered filing the petition and granting the appellant the right to introduce evidence before the commissioner in chancery showing the reasonable rental value of the machines. Evidence was accordingly adduced by the appellant showing the said rental value to be $125.00 per month. The commissioner failed to recommend an allowance for the use of the machines by the receiver, and appellant excepted to his report on that ground. An order was entered July 31, 1928, confirming the report and directing sale of the properties belonging to the Blue Ridge Coal Corporation and Brush Creek Coal Company. The appellant purchased the machines

at said sale, September 22, 1928, for $1,550.00. The decree of November 7, 1928, required appellant to pay into court the sum of $602.02 as its pro rata share of the court costs fixed at $8,644.80. These costs include a large allowance to the receiver, $1,134.70 to the special commissioners who sold the properties, $600.00 to James M. Mason, as commissioner, $1,800.00 to S. L. Flournoy, commissioner, and $3,000.00 to Ben Moore as attorney for the receiver. The properties of both corporations, which sold for $22,694.00, were, as already stated, covered by liens existing at the institution of the suit very largely in excess of the sale price, so that the suit brought by unsecured creditors served no purpose except to reduce the value of the securities of the lien creditors and to mulct them in the payment of $8,644.80, designated court costs. To the appellant, who resisted the course of the suit from its inception, the rulings complained of, if permitted to stand, would result in plain confiscation of property. The appellant was, under the circumstances, entitled to the full value of his security by being allowed compensation for the depreciation and deterioration of the machines or their rental value during their detention by the receiver. "A creditor holding a first lien on a piece of personal property constituting a part of the assets of a corporation whose business and property are in the hands of a receiver, and having insufficient security for payment of his debt, by virtue of such lien or otherwise, may properly be allowed reasonable compensation for the use of such property by the receiver, in the conduct of the business of the corporation, by the court in which its business is wound up and its assets distributed." *Clarksburg Casket Co.* v. *Valley Undertaking Co.*, 81 W. Va. 212, 3 A. L. R. 660. An inspection of the record discloses no legal basis for an allowance of $2,400.00 to the commissioners. Section 5, chapter 137, Code, provides that a commissioner shall not be allowed more than one dollar per hour for time employed or in lieu thereof twenty-five cents per hundred words; requires him to accompany his report with a certificate under oath stating the number of hours "actually and necessarily" employed by him; and prohibits the allowance and payment of fees in the absence of such certificate. "Where a report of a commissioner, under an order or decree of reference is re-

turned, it is the duty of the court, when called to its attention, to see that the certificate under oath, of the fees and time employed by the commissioner, as required by section 5, chapter 137, is annexed thereto, and that no fees be allowed or paid thereon until such certificate is made." *Weighand et al.* v. *Alliance Supply Co. et al.*, 44 W. Va. 133. The only attempted compliance with the requirements of the statute follows:

"To preparation of report in cause of Kanawha National Bank, a corporation, et al., vs. Blue Ridge Coal Corporation, a corporation, et al._____$1,800.00

To Publishing notice in the Charleston Mail as required by decree of reference entered in this cause under date' of June 9, 1927_____ 86.00

To publishing notice in Charleston Gazette as required by decree of reference entered in this cause under date of August 11, 1927_____ 9.10

Total_____$1,895.10

S. L. Flournoy
Commissioner in Chancery.

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, to-wit:
Subscribed and sworn to before me this 6th day of June, 1928.
My commission expires on the 5th day of January, 1930.

Murray Briggs,
Notary Public."

The decree refusing an allowance to the appellant for depreciation and deterioration of the machines, or their use while detained by the receiver, and also requiring the appellant to pay into court the sum of $602.02 as its part of the costs of the suit, are reversed, and the common pleas court is directed to ascertain the amount of loss to appellant by reason of the detention of the machines by the receiver, to be paid from the fund collected as court costs or assessments against the creditors who instituted the suit.

*Reversed and remanded*