C. H. SPRAGUE & SON, INC. *v.* PRICE HILL COLLIERY COMPANY *et al.*

(No. 9024)

Submitted April 10, 1940. Decided June 22, 1940.

*Clarence W. Meadows,* Attorney General, and *W. Holt Wooddell,* Assistant Attorney General, for appellant.

*L. Ebersole Gaines* and *Charles E. Mahan,* for appellee C. H. Sprague & Son, Inc.

*Poppenhusen, Johnston, Thompson & Raymond,* for appellees Municipal Acceptance Corporation and Ashton File.

*File, Scherer & File,* for Municipal Acceptance Corporation, Josephine D. Tucker, and Henry J. Tucker.

Fox, Judge:

Ernest K. James, State Tax Commissioner, appeals from a decree of the Circuit Court of Raleigh County, which denies the priority of certain tax liens of the State of West Virginia against the property of Price Hill Colliery Company. The decree appealed from was entered in a chancery cause, the purpose of which was to establish a receivership, convene the creditors of the Colliery Company and distribute the proceeds derived from a sale of its assets. The decrees which will be discussed were entered subsequent to the report of the commissioner to whom the cause had been referred.

The commissioner's report, filed February 20, 1939, fixed the priorities of the several liens as follows: First, the tax lien of the United States of America; second, liens of the State of West Virginia for taxes; third, the costs and ex-

penses of receivership; fourth, laborer's lien of J. W. Maxwell, attorney; fifth, a vendor's lien covering specific property in favor of Ashton File; sixth, rents and royalties under lease agreements and taxes paid thereunder; seventh, claims against specific personal property under conditional sales contracts; and eighth, unsecured claims.

The decree of sale entered upon this report and dated March 10, 1930, changed these priorities, and as to general liens fixed the same as follows: First, costs and expenses of receivership, amounting to $10,693.82; second, taxes due the United States of America, amounting to $23,824.12; third, taxes due the State of West Virginia, including gross sales taxes, consumer's sales taxes and corporate license fees, $8,491.60; and, fourth, unemployment insurance premiums due the State, $19,356.85. The priorities of certain specific liens to which attention will hereinafter be called were fixed in the same decree. It will be observed that as to these general liens the only important change placed the costs and expenses of receivership first in priority.

In view of the conclusion we have reached with respect to this appeal, it becomes necessary to more fully outline the provisions of the decree of March 10, 1939. The decree first ascertains the property owned by the Colliery Company as reported by the commissioner, and then provides: "From said report it is further ascertained and adjudged the following constitute liens and priorities in the order named to the persons and in the amounts set forth against all of the lands, interest in lands and other properties of Price Hill Colliery Company as adjudged in this decree." Then follows a statement of the amount fixed as costs of receivership and the amount decreed to the United States and the State of West Virginia. The decree then proceeds with the following provision: "And from said report it is further ascertained and adjudged that the following constitute valid and specific liens against the real estate, interests in real estate and properties of the Price Hill Colliery Company hereinafter specifically set forth to the persons and in the amounts following:". Then follows a statement of cer-

tain property taxes; $250.00 to J. W. Maxwell as a lien for legal services on all real estate of the Colliery Company; a vendor's lien, with interest, and tax subrogation lien, both aggregating $4,080.68, in favor of Ashton File, and covering particular tracts of land; various sums to various named persons representing royalties due under certain leases of coal properties operated by the Colliery Company; a decree of $265.18 in favor of the Robinson Ventilating Company under a conditional sales contract as a lien on a ventilating fan; and finally certain sums decreed under conditional sales contracts, aggregating $16,787.39, as liens on six Diesel oil engines. After providing for the payment of these specific liens, the decree makes the further important provisions: "It is further adjudged, ordered and decreed that for the purpose of paying off, satisfying and discharging the several liens as hereinabove ascertained and adjudged that the proceeds of the sale thereof be marshalled and as to those lands, interests in lands and personal properties or other properties against which there are no specific liens the same be applied first to the payment of the above recited receivership costs and the general liens in the order of their several priorities, including the general cost of these proceedings before any part of the proceeds of the sale of the other lands, interests in lands and other properties are so applied and the residue, if any, shall be first applied to the specific liens in the order of their respective priorities."

The contention of the appellant is that the priorities as fixed by the commissioner's report should have been adopted as the decree of the court, but we have here a decree, based upon the commissioner's report, which gives the costs of receivership first place in the order of priorities. No appeal therefrom has been taken or can be taken because of lapse of time. The decree has not been proceeded against on bill of review or motion, nor can it be at this time by reason of lapse of time. It would seem, therefore, that whether correct or not, the decree now stands as a finality, and that this case must be determined, not

upon what might have been a proper decree to be entered at that time on said report, but by the terms thereof.

The expenses of the receivership and the general costs of suit were properly decreed a first lien on all the property of the Colliery Company. There is no suggestion of any improper expenditure, and it is, we think, generally recognized that actual and legitimate expenditures necessary for the preservation of property, its sale and making the proceeds thereof available to creditors, must first be paid. Otherwise there could be no liquidation of estates and the distribution thereof among creditors or other claimants. *Hulings* v. *Jones,* 63 W. Va. 696, 60 S. E. 874; *City Bank* v. *Bryan,* 76 W. Va. 481, 86 S. E. 8, L. R. A. 1915F, 1219.

Subsequent to the entry of this decree the property of the Colliery Company was sold by special commissioners appointed for that purpose, and the sales thereof were confirmed on the 1st day of June, 1939, over the objection of the appellant. On August 23, 1939, said special commissioners filed a report setting out their total receipts from such sales and the amount of disbursements which had theretofore been made by them. The court, after approving these disbursements, proceeded to make direction as to the distribution of the sum remaining in their hands, and directed that after payment of court costs there should "be paid by the Special Commissioners certain specific liens against certain real estate and tangible personal property sold and confirmed and in accordance with the *report of the Commissioner in Chancery and the previous* orders and decrees of this court." Then follow directions that from the sale of six certain Diesel engines the unpaid purchase price be paid to the Municipal Acceptance Corporation, as assignee of Fairbanks-Morse & Company, that from the sale of one ventilating fan the balance due the Robinson Ventilating Company be paid, and that from the sale of two tracts of land conveyed to the Colliery Company by Ashton File the amount of his vendor's lien be paid. This is followed by a direction that the costs of receivership remaining unpaid should be satisfied and then

this provision: "Be it further adjudged, ordered and decreed that after the payment of the general costs, the specific liens, the receivership costs and the direct property tax, as hereinabove provided, that the Special Commissioners be and they are hereby authorized, directed and empowered to make distribution of the residue of the proceeds of the sale of all the properties in these proceedings sold and confirmed among the general lien creditors of the Price Hill Colliery Company, as set forth in the report of the said H. L. McCreery, Commissioner in Chancery, and as provided for in the orders and decrees heretofore entered herein."

It is obvious, of course, that by the decree of August 23, 1939, the court made a radical departure from the decree of March 10, 1939. The specific liens in favor of the Municipal Acceptance Corporation, Robinson Ventilating Company and Ashton File were made superior to the costs and expenses of the receivership, as well as the liens in favor of the United States of America and the appellant, State of West Virginia. We think no other reasonable view can be taken when we compare the decree of March 10 with that of August 23. The former decree first provides for the payment of costs of receivership and the tax liens, and then follows with an ascertainment of certain specific liens on particular property, but expressly provides, after these liens are set out, that the proceeds of the sale of the property of the Colliery Company should be marshalled, and that the proceeds from the sale of property upon which there were no specific liens should be first applied to the general liens, in the order of their priorities, including the general costs of the proceedings, before any part of the proceeds of the sale of the other lands and properties should be applied, and then says that the residue, if any, shall be first applied to the specific liens in the order of their respective priorities. Unquestionably, this provision of the decree contemplated that the general liens, which in this case are the receivership costs and tax liens, should have priority over the specific liens decreed, and be paid, first, out of property upon which there were no specific

liens, and, secondly, out of property upon which there were such liens and that then the residue derived from such last mentioned property should be applied to the specific liens in the order of their respective priorities. If the court by this decree meant what the holders of specific liens now contend, then why the provision therein that the proceeds of the sale of the property of the Colliery Company should be marshalled, to the end that such proceeds from property not covered by specific liens should be first applied to general liens having priority, and, to that extent, favor the holders of specific liens? If specific liens were intended to have priority over the general liens why was it necessary to provide for a marshalling of the funds for their benefit? Clearly, the general liens mentioned in the decree were, in keeping with the commissioner's report, intended to have priority over the specific liens, and an effort was made to lighten the burden of such general liens to the relief of the specific lien holders by the process of marshalling. Then the word "residue" used in the decree can only mean a residue from the sale of property covered by specific liens, because that is the only fund out of which any payment could have been made on such liens. A fund arising from property not covered by such specific liens, or any residue thereof, could not be used to pay such liens, unless as a common debt which would share the fund with all other claims of that class. In this view of this case we are unable to see how any reliance can be placed upon the decree of March 10 in support of the decree of August 23. To us they seem to be contradictory in the extreme.

Being unable to reconcile the two decrees, it follows that the decree of March 10, 1939, must control. The circuit court had no power to change that decree, after the adjournment of the term at which it was entered, except in the manner provided by statute, or upon a bill of review. *National Citizens Bank* v. *Bank of Charles Town,* 114 W. Va. 839, 174 S. E. 420; *Barbour et al.* v. *Thompkins,* 58 W. Va. 572, 52 S. E. 707, 3 L. R. A. (N. S.) 715. The statute provides that the Circuit Court of Raleigh County should hold a regular term beginning on the third Monday in February

and May, the fourth Monday in August, and the first Monday in December of each year, Code, 51-2-1 (j). The decree of March 10 was entered at the February term. This decree was an appealable one inasmuch as it adjudicated the principles of the cause. *Bank* v. *Bank of Charles Town, supra.* No appeal was taken from that decree and it must stand as the final judgment of the court upon all subject matters with which it purported to deal. It provided for the payment of the expenses of the receivership and fixed the priorities of the several tax liens, and the Court cannot at this date disturb the decree so entered.

The proper decree for entry by the Circuit Court of Raleigh County on August 23 would have provided first for the payment of the expenses of the receivership and the general costs of the suit; next the payment of the lien in favor of the United States of America; and next the sums decreed to the State of West Virginia, in accordance with what we construe to be the provisions of the decree of March 10, 1939.

The decree of the Circuit Court of Raleigh County entered on August 23, 1939, is therefore reversed, and the cause remanded for such proceedings as may be necessary to carry out the terms of the decree of March 10, 1939, as interpreted herein.

*Reversed and remanded.*