C. H. SPRAGUE & SON, *Inc.* *v.* PRICE HILL COLLIERY
COMPANY *et al.*

(No. 9273)

Submitted January 14, 1942.  Decided February 17, 1942.

32

*Clarence W. Meadows,* Attorney General, *W. Holt Wooddell,* Assistant Attorney General, *L. R. Via,* United States District Attorney, and *Charles M. Love, Jr.,* Assistant United States District Attorney, for appellants.

*Poppenhusen, Johnston, Thompson & Raymond* and *File, Scherer & File,* for appellee.

Rose, Judge:

This appeal was granted to the United States of America and George P. Alderson, as Tax Commissioner of the State of West Virginia, from a decree of the Circuit Court of Raleigh County, made on the 10th day of April, 1941, in a chancery cause in which C. H. Sprague & Son, Inc., was plaintiff and Price Hill Colliery Company, a corporation, was defendant, by which the Municipal Acceptance Corporation was allowed a claim of $12,250.00 as additional costs of the receivership in the cause, to be paid only from a sum decreed to the United States, by an order in the cause entered March 10, 1939.

This suit was instituted for the purpose of liquidating Price Hill Colliery Company, a corporation, and procuring an operating receivership *pendente lite.* Receivers were appointed, the assets and liabilities of the corporation were ascertained, and a sale of the property of the Colliery Company was made and confirmed. From certain provisions in the decree of confirmation relating to the distribution of the proceeds of sale, an appeal brought the cause here. *C. H. Sprague & Son, Inc. v. Price Hill Colliery Company,* 122 W. Va. 417, 10 S. E. 2d 574. After the mandate of this Court had gone down, the petition now involved was filed. For the facts in the case, and the proceedings had prior to the filing of the present petition, reference is made to the report of the case on the former appeal.

When the cause was here before, we determined that the decree of the lower court, made on the 10th day of March, 1939, adjudicating liens and priorities, was final and unalterable. We did not attempt to pronounce that decree in all respects correct. We merely determined that

it was final and beyond modification. None of counsel now appearing undertakes to assert that that decree was free from error, and such a conclusion could not be maintained; but it did fix immutably, for the purpose of this suit, the matters which were then determined. That decree now becomes the basis from which further conclusions in the cause must be deduced. Accordingly, we must consider what consequences, bearing on the decree now appealed from, flow from the matters adjudicated by the decree of March 10, 1939.

The petition filed by the Municipal Acceptance Corporation claims "rent" for the use of six Diesel engines used by the receivers of the Colliery Company during their operation of its plant. These engines were sold to the Colliery Company under a "conditional sales" contract by which title was reserved in the seller to secure notes given for the deferred installments of the purchase money. These notes were negotiated to the Acceptance Corporation and remain unpaid to the amount of $16,787.39. The engines were sold in this suit as the property of the Colliery Company for $22,100.00. They, with all other property of the Colliery Company, were, by the decree of March 10, 1939, adjudged to be subject to liens with priorities superior to the lien securing petitioner's notes as follows: (1) receivership costs, $10,693.82; (2) Federal taxes, $23,824.12; and (3) taxes due the State of West Virginia, $19,356.85. The aggregate selling price of all the Colliery Company's property was $51,287.00, from which it is apparent that the Acceptance Corporation has wholly lost its debt. It now claims "rent" for the use of the engines by the receivers and asserts that this rent should be classified as costs of receivership. The court allowed the claim in full and directed it to be paid from the amount allowed to the United States by the decree of March 10, 1939. Certain questions at once arise as to the legal possibility of this recovery on the Acceptance Corporation's petition.

That decree, appealed from, ordered that rent to the petitioner should be allowed in the sum of $12,250.00 as receivership costs and that the same "should be paid out

of the fund as hereinafter specifically provided, and not otherwise, and that the said claim is accordingly approved and allowed and directed to be paid out of the sum of $23,824.12 set out in the commissioner's report as a claim of the United States of America for taxes owing to it by the Price Hill Colliery Company, and the residue of the said sum of $23,824.12, together with all accrued interest thereon, be paid to the United States of America." The effect of this decree was not merely to displace the liens of the United States and of the State of West Virginia; in fact, it did not affect the ranking of the state's claim in the least; it did not add one cent to the liens adjudicated against the Price Hill Colliery Company; but it did appropriate for the payment of the petitioner's claim a part of the recovery formerly decreed to the United States. No explanation of this anomalous feature of the decree is attempted and no possible justification for it is perceived. For this reason, alone, the decree is beyond approval.

It will be observed, also, that the petitioner's claim is for rent on the engines in question from May 26, 1938, to June 3, 1939. This cause was, by an order entered on the 13th day of December, 1938, referred to a commissioner in chancery "for the purpose of adjudicating the claims which may be properly established against the said Corporation and the said receivers." The commissioner's report is dated February 10, 1939. It is, therefore, obvious that the major part of the rent claimed was incurred, if at all, before the commissioner's hearing was closed, and should have been presented for adjudication before him. The petitioner, therefore, was not entitled to have a recovery for any part of the claim now presented which accrued prior to the date of the closing of the hearing before the commissioner.

Another provision in the decree of March 10, 1939, rises up to obstruct the claim made in the present petition. It was therein adjudged that the engines in question were the property of the Colliery Company. The pertinent part of the order is as follows:

"It is further ascertained and adjudged that

Price Hill Colliery Company is the owner and possessed of the following tangible property like-wise shown on said appraisement list filed in these proceedings:

\* \* \* \* \* \* \*

"2. 6 certain Diesel Oil Engines more particu-larly described in said chattel mortgages between Price Hill Colliery Company and Fairbanks-Morse Company, of record in Raleigh County Court Clerk's Office."

A claimant cannot have rent for the property of another, without showing himself entitled to the possession and use thereof. In view of our holding in *Moran* v. *Leccony Smokeless Coal Co.*, 122 W. Va. 405, 10 S. E. 2d 578, 136 A. L. R. 1007, decided after the decree of March 10, 1939, the Acceptance Corporation, as assignee of the vendor of the engines, should have been adjudged the owner of the engines, but it was decreed otherwise and the decree stands as the law of the case, controlling, inescapably, the parties, the court below and this Court. It proved its debt, without making claim to the ownership of the en-gines; it took no exceptions to the action of the commis-sioner or court in the finding of ownership in the Colliery Company; it stood by, without objection, and permitted the sale of the engines as the Colliery Company's prop-erty, and allowed the purchase money to be paid and the possession of the goods to be delivered to the buyer. The time when the Acceptance Corporation could assert title to these engines in this suit is passed.

We do not consider this conclusion in conflict with the case of *Kanawha National Bank* v. *Blue Ridge Coal Cor-poration*, 107 W. Va. 460, 148 S. E. 574, in which it was held that:

"A creditor holding a first lien on a piece of personal property constituting a part of the assets of a corporation whose business and prop-erty are in the hands of a receiver, and having in-sufficient security for payment of his debt, by virtue of such lien or otherwise, may properly be allowed reasonable compensation for the use of such property by the receiver, in the conduct

of the business of the corporation, by the court in which its business is wound up and its assets distributed."

The instant case is, however, quite different. In the *Blue Ridge* case, the holder of the reservation of title appeared promptly in the suit and, by petition, objected to the use of the machinery on which its lien was held, and, being denied this relief, promptly filed a second petition asking compensation for the use and depreciation of the property in the hands of the receiver. This claim was then referred to the commissioner who was ascertaining receivership costs, and upon its disallowance by the commissioner and the court, the claimant promptly appealed here. The Acceptance Corporation in this case has done none of these things, and has not asserted, as did the claimant in that case, that the corpus of the lien subject had been lost or depreciated in value by reason of things done in this suit.

Much emphasis is placed by the Acceptance Corporation on the hardship wrought against it by its being prevented, through this suit, from repossessing the engines in question, and some justification for the present claim is shown to be based upon this theory. But it will at once appear that if there had never been any decree in this cause touching the engines, or, if this suit had never been instituted, the Acceptance Corporation could not even then have maintained its present claim for rent. It never has been and never could have been in a position when it would have been entitled to let or lease these engines or to have rental for their use. Before default and repossession, the purchaser, which, in this case, is the Colliery Company, was entitled to the absolute possession and use of the engines, and, therefore, to any rental which might be due therefor. Code, 40-3-2. After default and repossession, the Acceptance Corporation would have had no right either to use or lease the engines. Its sole right would have been to sell the same and apply the proceeds upon its purchase money notes and pay over the residue, if any, to the Colliery Company. Code, 40-3-3. The Acceptance Corporation, therefore, not only *is* defeated of

any possible recovery on its petition by reason of things done or not done, in this suit, but if the suit had never been instituted, its right to the rentals claimed could not have been maintained on the facts pleaded in its present petition.

- The decree of April 10, 1941, therefore, must be wholly set aside, the demurrers to Acceptance Corporation's petition sustained, and this cause remanded with directions that the proceeds of the sale of the property of the Price Hill Colliery Company be distributed and applied in all respects as though the present petition had not been filed.

*Reversed; remanded with directions.*