## CHARLESTON.

CENTRAL TRUST COMPANY, *Trustee et als. v.* GRANT P. HALL, *State Tax Commissioner et al.*

(No. C. C. 417)

Submitted February 13, 1929.  Decided February 19, 1929.

688

*Blue, Dayton & Campbell,* for plaintiffs.
*John T. Simms,* for defendants.

MAXWELL, JUDGE:

On this certification we are called upon to determine the sufficiency of a bill in chancery which challenges the right of the state to subject to sale under an alleged lien certain real estate on account of unpaid gross sales taxes of the then owner for the years 1922 to 1925, inclusive. The plaintiffs came into possession and ownership of this property in 1927 by virtue of a trustee's sale under a deed of trust executed in 1919 by Barren Creek Colliery Company, owner, which company, for the years first above stated, failed to pay its gross sales taxes aggregating $1,412.40 incident to its operation of the property during the years for which the tax was assessed as aforesaid.

By the Gross Sales Tax Act of 1921 it is not only provided that a tax thereunder shall constitute a debt to the state which

may be collected by action of assumpsit or other appropriate judicial proceeding, but that it shall constitute a lien upon all the property of the taxpayer. Code, Chapter 31-A, section 9. Similar provisions are carried into the re-enactment of 1925. Acts of 1925, Extraordinary Session, Chapter 1, section 11. The act of 1921 imposed an annual privilege tax (gross sales tax) from and after the 30th day of June of that year.

Though another important question appears in the background of this proceeding, the primary question for consideration, and the one which logically should receive first consideration, is this: Does the Act of 1921 have the effect of creating against the property here involved a lien for the unpaid taxes of the colliery company for the years 1922 to 1925, inclusive, paramount to the deed of trust of 1919, under which the plaintiffs hold title?

Nothing appears in the said acts expressly indicative of legislative intent to make the lien paramount to other liens against the property of a defaulting taxpayer. We do not attempt to decide whether that effect should be given to such lien as against encumbrances created subsequent to the enactment of the gross sales statute in 1921, as that question is not now before the Court; but we do hold that such paramount effect cannot be given as against an encumbrance that was created before the gross sales law came into being in 1921. It is true that the courts have given such retroactive effect to many congressional and legislative revenue enactments. See cases cited by Mr. Justice Brandeis in dissenting note in *Untermeyer* v. *Anderson*, ...... U. S. ......, 72 L. ed. ......, but examination of cases in that class discloses that they are predicated on provisions in the acts expressly or by necessary implication disclosing legislative intent of retroactive effect. In the absence, however, of such intent clearly expressed in an act or necessarily implied therefrom, such effect cannot be given thereto.

An eminent author thus states the law with reference to liens for taxes on lands: "It is not only competent for the Legislature to provide that taxes shall be a paramount lien upon the lands assessed, but it is within its constitutional power to enact that such liens shall have the precedence over

all mortgages and other incumbrances made or given before the enactment of the law creating the tax lien, and existing at the date of its passage. But the rule of construction is invariably against giving to a statute a retrospective operation, unless the intention that it shall so operate is expressed in terms too plain to be mistaken. And under this rule, a tax lien will not be allowed to outrank liens which attached before the passage of the law, except where the legislative design to give it this priority is perfectly obvious.'' Black on Tax Titles (2nd ed.), section 186. *A fortiori* this rule applies where the lien is not for taxes on the lands themselves but for a privilege tax against the owner. On this question as to when a statute is to be given retroactive effect, the law was settled in this jurisdiction many years ago. ''A cardinal rule in interpreting statutes is to construe them as prospective in operation in every instance, except where the intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively. In doubt it should be resolved against rather than in favor of its retrospective operation.'' *Stewart* v. *Vandervort*, 34 W. Va. 524. A few years later the proposition was stated a little differently but with equal force: ''No statute, however positive, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared; and the courts will apply new statutes only to future cases, unless there is something in the very nature of the case or in the language of the new revision which shows that they were intended to have a retroactive operation.'' *Rogers* v. *Lynch*, 44 W. Va. 94. Other West Virginia cases have recognized and applied this principle. *State* v. *Mines*, 38 W. Va. 125; *Harrison* v. *Harman*, 76 W. Va. 412; *Overton* v. *Heckathorn*, 81 W. Va. 640. The proposition is fundamental. ''It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively.'' Cooley's Constitutional Limitations (7th ed.), p. 529. The

cases are many and are unequivocal. Two will illustrate. *Whitlock* v. *Commonwealth,* 105 Va. 242; *White* v. *United States,* 191 U. S. 545.

For the reasons aforesaid we are of opinion that the circuit court of Kanawha county properly overruled the demurrer to the plaintiff's bill.

.*Affirmed.*