# CHARLESTON.

CLAY COUNTY BANK *et al.* *v.* MABEL FOUT WILSON *et al.*

(No. 6536)

Submitted November 18, 1930.   Decided November 25, 1930.

(Rehearing denied January 19, 1931.)

*D. H. Hill Arnold, Talbott & Hoover, S. T. Spears* and *R. S. Irons,* for appellants.

*Rummel, Blagg & Stone* and *Maurice J. Crocker,* for Mabel Fout Wilson, appellee.

MAXWELL, JUDGE:

This appeal involves an effort of creditors of William G. Wilson, deceased, to reach funds which have been paid to his

widow, Mabel Fout Wilson, under policies of insurance on his life. The contention of the creditors was presented by their petition filed in a chancery suit which had been instituted by Mabel Fout Wilson, administratrix, c. t. a., of the estate of William G. Wilson, deceased, for the purpose of subjecting the real estate of said decedent to the payment of his debts and of settling his estate. The petitioners appeal from a decree of the circuit court dismissing their petition.

William G. Wilson died November 16, 1925. The appraised value of his estate was $98,818.71. His primary indebtedness was about $100,000.00. His secondary indebtedness was about $117,000.00, but the ultimate liability of the estate under the latter class remains to be determined. He was greatly involved financially for many years preceding his death. We are enforced to believe from the record, and we find therefrom that at no time for at least five years prior to his death was his estate sufficient to satisfy his indebtedness.

The decedent was married to Mabel Fout Wilson April 22, 1908. Soon after their marriage, he undertook to assign to her certain policies of life insurance which he had theretofore purchased. Certain of these assignments are attacked because in the assignments themselves the insured reserved the right to revoke the same at any time by notice to the company. It is also said that at least one of the policies purported to be assigned was not delivered to Mrs. Wilson by the insured. Passing over the question raised as to whether these two propositions are sufficiently presented by the pleadings, we shall consider them on their merits. The record does not disclose whether the policies with the assignments thereon were delivered by the insured to his wife or whether they were found among his papers after his death. In the absence of proof of actual delivery we will assume that they were found among the decedent's papers. There is no evidence that Mrs. Wilson knew about the assignments until after her husband's death. Under requirements of the insurance companies, the assignments were executed in duplicate by Mr. Wilson and forwarded to the respective companies which approved the same, retained one copy of each and returned the other to the

insured. This was sufficient to constitute delivery to his wife. Manual delivery was not necessary.

Where there is an attempted assignment of a life insurance policy to a stranger, there is generally a rigidity of requirement of physical delivery to the assignee. *Spooner* v. *Hilbish*, (Va.) 23 S. E. 751. But where the assignment is to the wife or infant child of the insured, the necessity for manual delivery does not exist, and such delivery is therefore not required. In such circumstances the filing of a duplicate of the assignment with the company in compliance with a requirement of the contract of insurance is held to be a substitute for manual delivery. *New York Life Ins. Co.* v. *Dunlevy*, 214 Fed. 1. To the same effect is *Penn Mutual Life Insurance Co.* v. *Forbes*, 200 Ill. App, 441, where the insured executed, in duplicate, to her minor children, an assignment of a policy, payable to her estate, and sent a copy of such assignment to the insurance company which accepted the same, but the insured retained the policy in her possession until her death, it was held that such an assignment was valid without a manual delivery of the policy. See also *Northwestern Mutual Life Ins. Co.* v. *Wright*, (Wis.) 140 N. W. 1078, where an assignment was held valid from a son to his mother and sister, although not accompanied by actual manual delivery of the policy. In *Burges* v. *New York Life Ins. Co.*, (Texas) 53 S. E. 602, it was held that actual delivery of an assignment of an insurance policy to the assignee, who was the assignor's adopted child, was unnecessary to validate the assignment. Likewise *Shorey* v. *Webb*, (Md.) 89 Atl. 391 (no actual delivery to wife); *Thompson's Ex'r.* v. *Thompson*, (Ky.) 226 S. W. 350 (no delivery to minor children); *McDonough* v. *Aetna Life Ins. Co.*, 78 N. Y. Sup. 217 (assignments lodged with insurer; assignee a third person with no insurable interest).

As to the proposition that certain of the assignments are ineffectual because the assignor reserved the right to revoke the assignments, it is sufficient to note that an assignee of a life policy under an assignment containing such reservation occupies as secure a position as does a beneficiary under a policy wherein the insured expressly reserves the right to

change beneficiaries at his election. True, some authorities make a distinction between "change of beneficiary" in a policy and "assignment" by the insured of his interest therein, the latter resting on contract and the former on the power to appoint. VII Cooley's Briefs on Insurance, p. 6443; *Ehlerman* v. *Bankers' Life Co.*, (Iowa) 200 N. W. 408. But in equity substance rather than form must be considered. Neither such assignee nor such beneficiary has an irrevocable interest until the death of the insured. Whatever we may term it, a qualified vested right, a contingent interest or an inchoate right, it becomes a vested right upon the death of the insured. There is no more justification to challenge the status of such assignee on such ground after the death of the insured than there would be to assert that a named beneficiary could not take under a policy after the death of the insured because some other beneficiary might have been substituted by the insured.

In the recent case of *Webster* v. *Telle*, (Ark.) 6 S. W. 2d 28, Edward Telle insured his life in the Prudential Insurance Company and designated his beneficiary the Alexander Refining Co. The right to change the beneficiary was not reserved. However, upon the request of Telle and the beneficiary named the insurance company changed the beneficiary by substituting the "executors, administrators or assigns" instead of the beneficiary originally named. In a financial statement later made to a bank by Telle, among other things, is the following: "Life insurance carried for $15000. Beneficiary, wife. In his will, Telle said: "I have made my beloved wife, Bernice Phillips Telle, the beneficiary of three life insurance policies," etc. Upon his demise, a contest arose over the disposition of the insurance between Webster, his executor, and Bernice Telle. The latter claimed as beneficiary by the terms of the will and also on the ground that Telle during his lifetime had assigned and delivered to her the policies as security for certain money she had loaned him. The insurance company knew nothing of this assignment, its provisions as regards assignments not having been complied with, nor were the policies in her possession at her husband's death. She merely claimed under an oral and equitable assignment.

The court in holding that there had been a valid assignment said: "The assignment of the policies by Telle to his wife, ipso facto made her, as his assignee, the beneficiary of those policies under their very terms. Thereafter, and at the time of his death, Telle had no interest therein, and, of course, the executor of his estate and the creditors had none because they had only such rights as Telle himself had at the time of his death. * * * It was conceded by the appellant that Telle was an intelligent business man. As such he must have known that under the terms of the policies in controversy, he could not have made Mrs. Telle a beneficiary merely by appointment, but that the only way that she could be made beneficiary would be to assign the policies to her, which he had done. True, as before stated, he did not use the technical term 'assignee', but he did state that he had made her the beneficiary in the policies, which in the light of the policies themselves, necessarily meant that he had assigned the policies to her."

Numerous other cases reiterate the principle that assigning a policy is tantamount to changing the beneficiary. *Judson* v. *Walker*, (Mo.) 55 S. W. 1083; *Merchants Life Insurance Co.* v. *Gerrard*, (Ga.) 124 S. E. 715; *Atlantic Mutual Life Insurance Co.* v. *Gannon*, (Mass.) 60 N. E. 933. We deem this position sound in principle.

Section 5, chapter 66, of the Code, as it existed prior to the amendment of 1929, reads: "It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with her assent, as her trustee, to cause to be insured for her sole use, the life of her husband, for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, and for her own use, free from the claims of the representatives of her husband or any of his creditors; but such exemption shall not apply where the amount of premium annually paid out of the funds or property of the husband shall exceed one hundred and fifty dollars." We are not concerned here with the 1929 amendment.

Apropos of this section as quoted, it is urged on behalf of the petitioners that the proceeds of all insurance purchased with the excess of $150.00 per year should be held liable for the indebtedness owing by W. G. Wilson at the time of his death.

It will be noted that the above section refers specifically to the purchase of insurance on the husband's life by the wife ''in her own name, or in the name of any third person, with her assent, as her trustee.'' It does not specifically include insurance purchased by the husband himself for the benefit of his wife. Should the statute be construed to apply to insurance so purchased by the husband? Such has been the construction of the courts of some of the states where there are similar statutes. VII Cooley's Briefs on Insurance, p. 6511; *Houston* v. *Maddux*, (Ill.) 53 N. E. 599; *Felrath* v. *Schonfield*, (Ala.) 52 Am. Rep. 319. It is said that in such instances the husband is presumed to act for his wife and as her agent; that the statute is to be liberally construed. Can, however, such construction be given our statute in the light of its legislative history? The statute continued in the form as quoted from the time of its enactment, Acts 1866, chapter 77, section 1, until 1891 when it was changed by adding thereto these words: ''And if she fail to do so, her husband may insure his life for her benefit to the same extent and with like effect as if she had done so in the manner herein provided.'' Acts 1891, chapter 109, section 5. By chapter 3 of the Acts of 1893, the said addition to the Act of 1891 was eliminated and the act restored to its former condition in which it has remained from 1893 until amended by chapter 26 of the Acts of the Legislature of 1929. Now what does the elimination from the statute of the provision which was added in 1891 indicate? Does it mean that the Legislature of 1893 considered that the original statute, when properly construed, plainly included insurance purchased by the husband and therefore the addition of the provision of 1891 was surplusage and should be eliminated; or does it mean that the Legislature of 1893 considered that the original statute was not meant to apply to insurance purchased by the husband, that the addition of 1891 was a mistake, and that as to insurance pur-

chased by the husband an exemption of $150.00 per year for premiums should not necessarily apply in all cases, but that the only requirement should be that the amount of premiums so applied should be reasonable? We think the latter view is more tenable. In the first place, the addendum of 1891 would not have been added if the Legislature had not thought that the old statute did not apply to insurance purchased by the husband. And in the second place, it is most reasonable to believe that the Legislature of 1893 revoked the amendment because it was the legislative intent that the statute should not include insurance purchased by the husband. Such reasonably appearing to have been the legislative intent, it is not permissible now to read into the statute by intendment that which has been expressly eliminated therefrom. ''Where a statute is revised, some parts of the original act being omitted, the parts which are omitted cannot be revived by construction, but are to be considered as annulled, provided it clearly appears to have been the intention of the legislature to cover the whole subject by the revision.'' 36 Cyc. 1080; I Lewis' Sutherland Statutory Construction, (2nd Ed.), sec. 270; *Rhodes* v. *Coal Co.,* 79 W. Va. 71. We are thus forced to the conclusion that the said statutory provision has no direct application to life insurance purchased by a husband for the benefit of his wife. And even if it did apply, the creditors would only be entitled to premiums paid within the period of the statute of limitations, in excess of the annual exemption of $150.00 and not to the insurance purchased by said excess. *Sternberg* v. *Levy,* (Mo.) 53 L. R. A. 438; *Johnson* v. *Bacon,* (Miss.) 45 So. 858.

Alternative of the last above contention of petitioners it is urged by them that in any event the proceeds of insurance collected by Mrs. Wilson ''should be charged with the sum of $6,416.20, the amount paid by W. G. Wilson, during the five years immediately preceding his death, as premiums upon insurance and which said sum was a fund paid by said Wilson, while insolvent, as a voluntary donation or gift to his wife.'' To sustain this position would be in disregard to the well recognized right of an insolvent husband to make reasonable provision through insurance on his own life for the maintenance of his dependent wife after his death. ''The doctrine is

supported by the weight of authority that an insolvent husband may insure his life in a reasonable amount for the benefit of his wife and children, without any right on the part of his creditors to claim that the premiums for such insurance were paid in fraud of creditors, if there is no actual fraudulent intent on his part." 31 A. L. R. 52, note, and cases cited. This is not a universal rule but we give it our approval because we deem it more consistent with sound reason than is the opposing doctrine. The question next arising, then, is, what is a reasonable amount to be used by an insolvent husband in the purchase of insurance on his own life for the benefit of his wife? What standard should be employed in determining the reasonableness of the amount he may divert from his creditors and use for the payment of insurance premiums for the benefit of his wife, there being no children? The legislative standard is reasonable and in the absence of a satisfactory showing to the contrary, may safely be followed, by analogy. Under the statute, prior to 1929, if the insurance was purchased by the wife and paid for by the insolvent husband, he might employ his funds to the extent of $150.00 per year for that purpose. This is the legislative expression as to reasonable amount to be diverted from creditors under such circumstances. There is no reason why, in this case, a larger amount should be permitted to be diverted for the benefit of the wife merely because it happens that the husband himself purchased the insurance. We are therefore of opinion that there should be subjected to the payment of the debts of W. G. Wilson, deceased, to be paid out of the insurance money collected by his widow, so much of the total amount paid by him in discharge of life insurance premiums within five years preceding his death, with interest, as exceeds $150.00 per year during that period. Under the rule sustained by authorities already cited, creditors are not entitled to the full extent of premiums paid by the husband. Adjustment on the basis stated should not include premium notes executed by the insured within said period and deducted by the insurer from proceeds of insurance after the death of the insured. And for the purpose of ascertaining and decreeing the proper

amount as indicated, this cause will be remanded to the trial court.

It is further insisted by Mrs. Wilson that in no event should she be required to account for any of the insurance money collected by her under policies on her husband's life without giving her credit for $8600.00 for which she says her husband, an active executor of the last will of her father, J. H. Fout, deceased, failed to account to her as part of her share of said estate; and that as to said sum, with interest, she is a preferred creditor of her husband's estate under provision of sec. 25, chap. 85, Code, which gives debts due by a decedent in his capacity as a personal representative preference over all other indebtedness except that which is due the United States, and taxes and levies assessed upon the decedent prior to his death.

A party to a suit may not assume inconsistent positions therein. *McDonald* v. *Long,* 100 W. Va. 551. For that reason, Mrs. Wilson cannot sustain the preference which she now asserts. In the bill filed by her as administratrix c. t. a., she alleged upon information and belief that the decedent was indebted in the sum of at least $24,500.00 to Mabel Fout Wilson in her individual capacity, but there was no allegation that said decedent had failed to account to said Mabel Fout Wilson for any portion of her share of the estate of her deceased father. She filed no exception to the report of the commissioner in chancery which ascertained the indebtedness of her deceased husband and fixed the priorities thereof but which report made no mention of any sum owing to her by him as executor of the J. H. Fout estate. A decree confirming said report, save as to one item to which an exception was sustained, and directing the administratrix to sell certain stock which the decedent had pledged as collateral was entered the 15th day of June, 1927. On the 20th of January, 1927, a few days before she filed her said bill, Mrs. Wilson, acting individually, joined with her sister, Mrs. Kathleen Fout Christhilf, releasing and discharging their respective husbands, William G. Wilson, deceased, and Frank D. Christhilf, as co-executors of the last will of J. H. Fout, deceased, "from any and all liability of every kind and character to us as such devisees

under said will, hereby acknowledging full payment, settlement, satisfaction and discharge to us of the bequests in full by said will made to us. We do hereby further agree and consent to the full and complete release and discharge of said executors and each of them and the sureties on their bond from all other, further or future liability and responsibility in respect to said estate. * * *." This release purports to be under seal, but the record does not disclose a seal actually attached nor any scroll in lieu thereof.

Under date of August 5, 1927, Mrs. Wilson and her sister, Mrs. Christhilf, executed, under seal, a release and discharge of Mabel Fout Wilson, as administratrix with the will annexed, of J. H. Fout, deceased, she having qualified as such subsequent to the death of her husband. In this latter release reference is made to the fact that William G. Wilson and Frank D. Christhilf, executors of the last will of J. H. Fout, deceased, had been released and discharged as such executors by the above mentioned release theretofore executed by Mrs. Wilson and Mrs. Christhilf. Now, while the first release may not be legally binding upon Mrs. Wilson and her sister because of want of consideration, the instrument not being under seal, the recitals and statements contained in the two releases strongly evidence the fact that Mrs. Wilson then considered the J. H. Fout estate as definitely settled and acted accordingly.

After all of these things had been done, the petition of Clay County Bank and others was filed February 1, 1928. In March of the same year, Mrs. Wilson filed her answer to the petition. Therein she alleges by way of new and affirmative matter that her deceased husband as active executor of the last will of J. H. Fout, deceased, had failed to pay to her a large sum of money, amount not specified, part of her share of said estate. She further asserts in said answer that the release of August 5, 1927, was without consideration, but that at the time she executed the same, she was willing to release her husband's estate from liability on account of the amount due to her by him as executor of her father's estate, because she had received the proceeds of the policies of insurance on her husband's life.

Mrs. Wilson's whole course of conduct prior to the filing of this answer is inconsistent with the position she seeks to take therein. That course of conduct included (1) absence of allegations from her bill as administratrix with reference to any failure on the part of her husband as executor of the Fout estate to make proper accounting to her; (2) failure on her part to answer said bill and set up such claim; (3) failure by her to except to the commissioner's report ascertaining the indebtedness of her husband's estate and fixing priorities; (4) the execution by her of the release of January 20, 1927; (5) the execution by her of the release of August 5, 1927, confirming the former release, and on the basis of the said two releases effecting a settlement of her stewardship as administratrix, c. t. a., of the estate of J. H. Fout, deceased. In the light of this course of conduct based definitely upon the position that there had been full settlement of the Fout estate, she cannot now be heard to say that because she is called upon to account for a portion of the proceeds of insurance policies upon the life of her husband she will repudiate all of said prior course of conduct and assert a preferred claim against her husband's estate with reference to something as to which her very conduct was consistently such as to lead everybody connected with the case to believe there had been a final settlement.

For the foregoing reasons we reverse the decree of the trial court and remand the cause for further proceedings to be had in accordance herewith.

*Reversed and remanded.*