Harry E. Moran *v.* Leccony Smokeless Coal Company *et al.*

(No. 9023)

Submitted April 10, 1940.   Decided June 22, 1940.

*Clarence W. Meadows,* Attorney General and *W. Holt Wooddell,* Assistant Attorney General, for appellant.

*William H. Sawyers* and *File, Scherer & File,* for appellee Piney Coking Coal Land Co.

*Ashworth & Sanders,* for appellees Beckley Nat. Exchange Bank, trustee, and Leccony Smokeless Coal Co.

Fox, Judge:

Ernest K. James, State Tax Commissioner, appeals from a decree of the Circuit Court of Raleigh County, entered on the 23rd day of August, 1939, which denied to the State of West Virginia the priority contended for as against the property of the Leccony Smokeless Coal Company on account of certain tax liens established in the cause.

This was a proceeding to subject to sale the property of the Coal Company. Receivers were appointed to preserve the property and the cause was referred to a commissioner in chancery to ascertain the property owned and the various debts and liens thereon. The report of the commissioner was filed on the 18th day of May, 1939, and a decree entered thereon on the 31st day of May. By this decree it was adjudged that as to personal estate the lien of the State and its sub-divisions for personal property taxes for the years 1937, 1938, and 1939 was first in priority; second, the lien of Piney Coking Coal Land Company for rents, royalties, and taxes paid under lease, aggregating the sum of $28,202.74, excepting from the force of this lien certain property held by the Coal Company under conditional sales contracts; third, the holders of first mortgage bonds aggregating $200,000.00; fourth, certain judgments upon which executions had issued, the priority as between these judgments being fixed by the decree; fifth, a judgment in favor of Wilmot Engineering Company; sixth, a lien in favor of Sanford Day Iron Works, Inc.,

against certain mine cars, under a conditional sales contract; seventh, liens in favor of Mine Safety Appliance Company and the Hartzell Propellor Fan Company against specific property, also obtained under conditional sales contracts.

As to the real estate, the first lien established by the decree of May 31, 1939, is that of the $200,000.00 mortgage bonds mentioned above, and the priority of the remaining liens was, in the order named, fixed as follows: The lien of the Board of Education of Raleigh County on 87/100 acres of land under a deed of trust; certain judgments, in the order named in the decree, and certain laborers' or mechanics' liens; the lien of the United States Government, amounting to $15,546.72; gross sales taxes due the State of West Virginia for the years 1937 and 1938, and consumer's sales taxes for the same years which, with penalties, aggregate $8,996.04, and a further claim of $1,044.99; certain funds designated as trust fund liens; the lien of the State Department of Unemployment Compensation in the sum of $25,133.45; and, last, the common claims.

It will be observed that as to the personal property the amount decreed as rents, royalties and taxes, as well as the bonds proven under the mortgage lien mentioned, take priority over the lien of the State of West Virginia for its indirect taxes, and that as to the real estate the mortgage lien of the bond issue of $200,000.00 and the lien of the Board of Education of Raleigh County, together with various liens in favor of holders of judgments and laborers' and mechanics' liens take precedence over the lien of the State of West Virginia for its indirect taxes, and the question of the correctness of that holding is presented to us for review. There are the additional questions of whether or not the expenses of receivership and costs of suit must first be provided for and whether the holders of claims under conditional sales contracts are entitled to priority over the lien of the State for its taxes. We will consider these questions in their proper order.

A motion was made by the United States at the same term to set aside this decree, of which the court took time to consider. The motion was withdrawn on August 23, 1939, and on that day a decree was entered ratifying and confirming the decree of May 31. From this later decree the appellant prosecutes this appeal.

We interpret the decree appealed from as providing for the payment of the expenses of the receivership and the general costs of the suit, out of the funds in the hands of the receivers, before any of the other liens in question attach. We think this ruling is correct. Apparently there is no serious objection thereto, although points one and two in the assignments of error contained in the petition for appeal do raise the question of the right of the court to decree any lien, other than that of the United States, as superior to the lien of the State. What we have said in the case of *C. H. Sprague. & Son, Inc.,* v. *Price Hill Colliery Company,* decided on this day, 122 W. Va. 417, 10 S. E. (2d) 574, will suffice to express our views. These views are supported by the cases there cited: *Huling* v. *Jones,* 63 W. Va. 696, 60 S. E. 874, and *City Bank* v. *Bryan,* 76 W. Va. 481, 86 S. E. 8, L. R. A. 1915F, 1093.

The claim of the State of West Virginia is based upon the statutes imposing what is known as the gross sales tax and the consumer's sales tax. The gross sales tax was first established in this State by Chapter 110, Acts of the Legislature, 1921, (Code, 1923, Chapter 31A). By that act it was provided: "A tax assessed under this act shall constitute a debt due the state and may be collected by action of assumpsit or other appropriate judicial proceeding. If not paid when due it shall constitute a lien upon all the property of the tax-payer * * *." In *Central Trust Co.* v. *Hall,* 106 W. Va. 687, 146 S. E. 825, the effect of this act on liens existing prior to the enactment of the law was considered. Gross sales taxes for the years 1922 to 1925, inclusive, were assessed against certain real estate of the Barren Creek Colliery Company. This company had in 1919 executed a deed of trust to secure a debt under which the property covered thereby was sold and purchased by the

Trust Company, and it was contended that the act not being retroactive in its terms, the purchaser under the deed of trust, who acquired title in 1927, could hold the property free of the tax lien, and the Court sustained that position. That case is strongly relied upon as decisive of the case at bar, but amendments since that decision are as strongly relied on to support a different theory. The act was amended in 1933 (Chapter 33, Section 12, First Extraordinary Session, 1933). By that act it was provided: "A tax due and unpaid under this article shall be a debt due the state and shall be a lien upon the property used in the business or occupation upon which it is imposed. The lien shall have the same priority as the lien of the general property tax." The pertinent provision of the act in its present form, as amended by Chapter 106, Acts 1937, effective on March 13th of that year, is as follows: "A tax due and unpaid under this article shall be a debt due the State. It shall be a personal obligation of the taxpayer and shall be a lien upon all property used in the business or occupation upon which such tax is imposed and said lien shall have priority over all other liens and obligations except those due the United States." 1937 Michie Code, 11-13-12.

As to the consumer's sales tax, which was first enacted in 1933, the provision with respect to liens, Chapter 108, Acts 1937, is: "A tax due and unpaid under this article shall be a debt due the State. It shall be a personal obligation of the taxpayer and shall be a lien upon all of the property of the taxpayer. The lien shall have priority over all other liens and obligations except those due the United States." 1937 Michie Code, 11-15-17. It will be observed that the lien of the gross sales tax is limited to the property "used in the business or occupation upon which such tax is imposed," while the lien of the consumer's sales tax is upon all of the property of the taxpayer.

It was held in *Central Trust Co.* v. *Hall, supra,* that "a statute is not to be construed as designed to interfere with an existing contract or with vested rights, unless the intention that it shall so operate is expressly declared; and

the courts will apply a new statute only to future cases, unless there is something in the very nature or language of the act which discloses legislative intention or retroactive operation." That case states a sound principle of law, and we are bound thereby. We think, however, the case before us is quite different from that presented to the Court in *Central Trust Co.* v. *Hall.* There the statute under consideration provided that the tax should constitute a lien upon the property of the taxpayer, but the priority of that lien was not declared. Under these conditions the court was fully warranted in holding that, in the absence of express language declaring the statute to be retroactive in effect, the lien created thereby would not be superior to an existing lien. Assuming, as we have a right to do, that the legislature, when it amended the act in 1933 and 1937, had before it this holding, it is fair to say its natural intent would have been to correct the weakness which the decided case had developed, and it evidently attempted to do so, because in the 1933 amendment it provided that the lien should have the same priority as the lien of the general property tax, clearly showing an intention to create a priority in favor of the State. Just how this provision as to the priority of the general property tax should be interpreted became a disputed question, and is even raised in the briefs in the case at bar. It is said that if it referred to the personal property tax, as they contend it did, there was no lien therefor prior to a levy, and, therefore, no lien provided for by the amendment. Our view is that this provision was intended to have some meaning, and that the lien referred to was the lien of property taxes on real estate, and that the effect of the 1933 amendment was to create a priority in favor of the State. However this may be, the doubt arose, and in 1937 a further amendment was made by which it was provided that the lien should be upon the property of the taxpayer, limited as above stated as to gross sales taxes, and that the same should have priority over all other liens and obligations except those due the United States. We find it difficult to give any meaning to the provision "all

other liens" except the ordinary plain and simple mean-
ing which the words used imply, and we think they cover
a prior lien, as well as those created after the amendment
was enacted. True, the statute could have said "all other
liens both prior and future" but we do not think it neces-
sary. No rule of law, or interpretation of tax statutes in
favor of taxpayers requires us to raise doubts as to the
meaning of an act, where, in giving words their plain and
usual meaning, no doubt can reasonably arise. The legis-
lative intent to give tax liens superiority over all other
liens, except those of the United States, is, in our judg-
ment, clear and unmistakable, and the language employed
is sufficiently broad to cover liens created prior to the
amendment.

The right of the State to enact a law giving a tax lien
priority over existing liens does not seem to be disputed,
and seems to be conceded in the discussion in *Central Trust
Company* v. *Hall.* We think this proposition cannot be
disputed. The taxing power of the State is very broad
indeed, and can only be restrained by reliance upon the
due process provision of our Federal and State Constitu-
tions which protect against confiscation. No such ques-
tions arise in this case. We are only concerned with a
question as to the meaning of the language employed in a
statute. The right of the State to its priority over all
other liens, existing or otherwise, under statutes imposing
indirect taxes, has not been before this Court except in
*Central Trust Company* v. *Hall;* but the question involved
has been discussed in cases from other jurisdictions. *State*
v. *Wynne,* (Tex.), 133 S. W. (2d) 951; *Hibernia Mortgage
Co.* v. *Greco,* 191 La. 658, 186 So. 60; *Atlanta Trust Co.* v.
*Atlanta Realty Corp.,* 177 Ga. 581, 170 S. E. 791; *State Reve-
nue Commission* v. *Rich,* 49 Ga. App. 271, 175 S. E. 394;
*Marshall* v. *New York,* 254 U. S. 380, 41 S. Ct. 143, 65 L. Ed.
315. These are comparatively recent cases and cover, in
general, the type of indirect taxation which occupies so
important a place in our tax system; they present situa-
tions closely analagous with that before us on appeal;
the rulings made are clear and convincing; and they sus-

tain the contention of the State in the case at bar. The cases cited by the appellee are not, in our opinion, clearly applicable; rather they deal with the general proposition that clarity of language of taxing statutes and the intent to be drawn therefrom, must exist to uphold the taxes as against a taxpayer, and that doubts will be resolved in favor of the taxpayer. This rule is undoubtedly well established, and citation of the many authorities which uphold it does not seem to be necessary. However, the question of whether or not, where once a tax is upheld, any presumption in favor of the taxpayer extends to questions of priority, where persons other than taxpayer are involved, is more doubtful. There is, on the question of liens and their priorities, a prerogative right in favor of the State over general creditors, independently of any statute. *Woodyard* v. *Sayre*, 90 W. Va. 295, 110 S. E. 689, 24 A. L. R. 1497; *United States Fidelity & Guaranty Co.* v. *Central Trust Co.*, 95 W. Va. 458, 121 S. E. 430; and we incline to the view that the principles announced in these cases should have a bearing, on the questions of priority, as between the State and one of its citizens, as regards presumptions to be indulged, and the strictness of interpretation required. We do not go so far as to say that, where no priority of lien is provided for by statute the prerogative right of the State will prevail over lien holders existing at the effective date of the statute creating a lien, or, for that matter, as to liens created after that date. Liens seem to occupy a favored status and only the sovereignty of the State, through a proper exercise of its power, can displace them from the position they occupy.

We are, therefore, of the opinion that the Circuit Court erred in failing to give the liens of the State of West Virginia for gross sales and consumer's sales taxes priority over the liens for royalties due the various lessors, the lien due the Board of Education of Raleigh County under its deed of trust, and the lien of the mortgage securing the issue of bonds. While the instruments under which these liens were created antedated the amendments of 1933 and 1937 to the gross sales act and the creation of the con-

sumer's sales tax, we hold that the 1937 amendments to the two statutes, enacted at the same session, clearly show legislative intent to make the lien of the State, for the taxes imposed thereunder, superior to any and all other liens, except those in favor of the United States, regardless of whether said liens were created before or after the effective dates of the said amendments.

We now come to a consideration of the lien decreed in favor of the various creditors under conditional sales contracts, and where there was a balance of purchase money due on the personal property conditionally sold. This point is not covered by the briefs, but is raised on the petition for appeal. It will be recalled that the statutes creating the lien of the State differ in some degree as between the gross sales tax and the consumer's sales tax. As to the gross sales tax, it is provided that the tax "shall be a lien upon all property used in the business or occupation upon which such tax is imposed"; and as to the consumer's sales tax it is provided that the same "shall be a lien upon all of the property of the tax-payer." Under the consumer's sales tax statute, it is, of course, clear that the property on which the lien may be imposed must be that of the taxpayer; but, as to the gross sales tax, it is contended by the State that the act is broad enough to impose the tax upon property owned by persons other than the taxpayer, provided it is used in and about the business on which the tax is imposed. We are of the opinion that it was the legislative intent to tax only the property of the taxpayer, and that the section under consideration must be interpreted to mean that, in order to subject property to the lien of the tax, the title, legal or equitable, to the property used must be vested in the person, firm or corporation conducting the business. There is such an inherent unfairness in subjecting the property of one person to the obligations of another, that we shrink from imposing such a harsh rule, especially in view of the well known fact that in many cases, and probably in the case before us, the application of such a rule would destroy absolutely the protection to his rights sought by the seller in retaining to

himself title to the property sold until full payment of the contract purchase price. We see no reason why a seller or vendor is not entitled thus to protect himself. He occupies practically the same position as one who, in good faith, leases to another valuable personal property to be used in and about that other's business; and a strict interpretation of the statute would make such leased property liable to the tax. We are, therefore, of the opinion that legal or equitable title to personal property must be vested in the taxpayer before the State is entitled to enforce its claim against said property to the prejudice of the seller.

This brings us to the question of whether or not the purchaser of property under a conditional sales contract becomes the owner thereof to the extent that the State may impose upon it the lien of its taxes imposed upon the business of such purchaser. The courts and text writers are in hopeless confusion as to the status of the seller and purchaser, under these contracts, and we are not tempted to add to this confusion. The situation is very well expressed in 55 C. J. 1194, where it is stated:

> "There is a conflict of authority as to the nature of the security retained to the seller by the conditional sales contract. In many jurisdictions, it is held that the security so retained is a lien, or in the nature of a lien. In many other jurisdictions it is held that the security retained by the seller is not a lien but a reservation of title and the right to pursue the property in specie; and it has been said that this security is a higher class of security than either a mortgage, a lien, or a pledge."

The question is discussed in 1 Williston on Sales (second ed.) 754; 3 Williston on Contracts (revised ed.), section 734, 737; 24 R. C. L. p. 444, sections 743-744. In the matter of *Lake's Laundry, Inc.*, 79 Fed. (2d) 326, 102 A. L. R. 247, (C. C. A. 2d, cert. denied, 296 U. S. 622, 56 S. Ct. 144, 80 L. Ed. 442), it was held that property held by a conditional vendee is the property of conditional vendor until the contract price is paid, although the dissenting opinion in

this case is preferred by some of the text writers. Williston on Contracts, *supra,* p. 2091. In *Cook* v. *Insurance Co.,* 105 W. Va. 375, 143 S. E. 113, 61 A. L. R. 657, this Court held that the buyer had "sole and unconditional ownership" of property acquired by him under a conditional sales contract, within the meaning of a policy of insurance which required him to be such owner to entitle him to recover for loss thereof by fire, but this case is based upon the well recognized rule that insurance contracts are to be interpreted in favor of the insured. It was also held in that case that the interest of the buyer in such property is an equitable property right, and this right or title is termed a special equitable property right in *Industrial Bank of Richmond* v. *Holland Furnace Co.,* 109 W. Va. 176, 153 S. E. 309.

All authorities seem to recognize that the buyer has some character of ownership in the property he purchases. Under our uniform conditional sales act, Code, 40-3, the buyer is given the right, when not in default, to retain possession of the property, and is liable for the purchase price whether or not title to the same has passed to the buyer; and certain rights are reserved to the buyer with respect to repossession or sale, and as to redemption, where a specified percentage of the purchase price has been paid. The entire article, covering the various provisions of the act, convinces us that the prime purpose was to protect the seller in the payment to him of the agreed purchase money, and if he elects to protect himself in that respect by retaining title to the property sold as security for the purchase money, and complies with the terms of the statute, he may hold that right against other claims, except the lien of a levy for property tax which must first be satisfied. Even if we say that the purpose of the conditional sales contract is to secure the payment of the purchase money, it does not follow that we are warranted in holding that the seller did something which he expressly disclaimed, that is, passed title to the purchaser. The right to enter into contracts not inhibited by public policy, or some specific statute, still exists, and, when, under that

right, contracts are executed, they should not lightly be set aside, and made to mean something exactly the opposite to that which the parties thereto intended. We are of the opinion that the seller of property, sold under a conditional sales contract, in retaining title to the property sold, holds a preference over all liens, other than the lien of a levy for property tax, which may be created against the same in the hands of the purchaser, for the purchase price of the property so sold. However, this right of the seller to his purchase money must not be used to defeat the claim of other lien holders, or other creditors, as against any equity which may exist in the buyer after the purchase price has been paid in full, and, subject to the lien for the purchase money, other liens attach in regular order of priority. So under our holding herein, any fund remaining after the payment of the lien of the seller will be applied to costs and expenses of receivership, taxes due the United States, and taxes due the State of West Virginia, in the order mentioned.

Code, 40-3-5, provides:

"Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy or otherwise a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

The Mine Safety Appliance Company sold to the Coal Company on August 19, 1935, under a conditional sales contract two hundred and twenty-five electric safety cap lamps on which there remains due some $1,755.23, and that at some date not definitely known the Hartsell Propellor Fan Company sold to the Coal Company under a like contract one fan on which there is due $380.00. These contracts were not filed as required by the section quoted above. The court held that they were void as to lien creditors but entitled to preference against common cred-

itors. This holding, we think, was correct. The taxes due the United States of America and the State of West Virginia were certainly liens upon said property and being liens are entitled to be protected against the unrecorded contracts. The lien of Sanford Day Iron Works, Inc., under a conditional sales contract occupies a different status for the reason that apparently this contract was duly recorded, and being so recorded it is a prior lien and is protected under the holding we have made. Except as to the decree allowing priority to the lien of Sanford Day Iron Works, Inc., and refusing priority as to the other claims under conditional sales contracts, the decree of the Circuit Court of Raleigh County announced on August 23, 1939, is reversed and the cause remanded for such further proceedings as may be necessary and not inconsistent with the views expressed herein.

*Reversed and remanded.*