HARRY E. MORAN *v*. LECCONY SMOKELESS COAL CO. *et al*.

(No. 9287)

Submitted January 15, 1942. Decided February 17, 1942.

*File, Scherer & File* and *Wm. H. Sawyers,* for appellant.

*Clarence W. Meadows,* Attorney General, *W. Holt Wooddell,* Assistant Attorney General, *Ernest H. Gilbert, Jr., L. R. Via,* United States District Attorney, *Charles M. Love, Jr.,* Assistant United States District Attorney, and *Sayre & Bowers,* for appellees.

Fox, PRESIDENT:

The Piney Coking Coal Land Company prosecutes this appeal from a decree of the Circuit Court of Raleigh County, entered in this cause on the 8th day of August, 1941, by which the court denied to it, as part of the expenses of the receivership, a claim in the sum of $18,054.97 on account of rents and royalties accruing to it during the progress of the receivership of the Leccony Smokeless Coal Company, and in giving priority for tax claims to the United States of America and the State of West Virginia, to its prejudice.

The appellant's claim is based on a lease for the mining of coal executed by it to the Leccony Smokeless Coal Company, dated June 16, 1925, and a supplemental lease of the same character, dated July 1, 1930, and covering together tracts of coal aggregating 2,493.76 acres, which two leases carry with them a minimum annual rental on such property of $24,937.60, payable on the 15th day of January for the calendar year next preceding, but to be credited with any sums paid for coal actually mined under such leases during such preceding year. The receivership in this case covered a period beginning December 15, 1938, and ending August 23, 1939. No royalties for coal actually mined were paid by the receivers, so that the amount of the claim is based upon the minimum royalty provision, with interest calculated to the date of the decree complained of.

On the 15th day of June, 1930, supplemented by a paper called an "Indenture," dated July 1, 1930, the Leccony Smokeless Coal Company conveyed to the National Exchange Bank of Beckley, Trustee, the leasehold estate created by the leases above mentioned, along with other

property, to secure an issue of bonds aggregating the sum of $200,000.00, the principal part of which remained due and unpaid at the date of the institution of this suit.

It is contended by the appellant that its claim should be decreed to it, along with other expenses of the receivership, as a first lien on the corpus of the estate of the Leccony Smokeless Coal Company, and take precedence over taxes due the Federal Government and the State of West Virginia, other than *ad valorem* property taxes. The nature of this claim requires some extended discussion of the litigation leading up to the final decree.

On December 11, 1938, Harry E. Moran, one of the principal stockholders of the Leccony Smokeless Coal Company, instituted his suit against said company in the Circuit Court of Raleigh County, West Virginia, praying for the appointment of a special receiver for said company. On the 15th day of December, 1938, Claude Jarrett and John P. Bonner were appointed special receivers of the property and assets of the coal company, and were empowered to take charge of, hold, preserve, manage and administer the same, subject to the control of the court, and were authorized and directed to continue the business of the coal company, being that of mining and shipping coal, until the further order of the court. They were authorized to issue and sell receivers' certificates, not to exceed the sum of $50,000.00, to be used in mining, payroll and other expenses of receivership, including the maintenance of the stock of merchandise in the stores operated by the company, but were inhibited from incurring any indebtedness, over and above the amount so authorized, without further order of the court. With respect to receivers' certificates the decree provided that they "shall be re-paid at the end of ninety days from date of issue of said certificates out of the surplus of the first monies coming into the hands of said special receivers after the payment of all rents and royalties accrued during the receivership to Piney Coking Coal Land Company, its successors or assigns, from the sale of coal mined and shipped at the said mining plants of said defendant, Leccony Smokeless Coal Company." The special receiv-

ers were, by said order, instructed to deposit all monies which should come into their possession thereunder in the Raleigh County Bank, "and from time to time to check upon and withdraw from said account such sums of money as may be necessary to the performance of their duties hereunder, including the payment of current royalties on coal actually mined by such special receivers, and the necessary costs and expense incurred by them in complying with the terms of this decree * * *."

At February Rules, the Piney Coking Coal Land Company filed its answer, in which it averred that there was, at the date of the appointment of the special receivers, due to it from Leccony Smokeless Coal Company the sum of $21,649.53, for which it avers it was entitled to a first lien under the provisions of its said leases. It also averred the terms of the lease under which, as it alleged, it was entitled to a minimum annual rental from the property covered thereby in the sum of $24,937.60. In paragraph 12 of its answer it averred:

"This respondent further answering denies the right of this court to authorize or direct the Special Receivers to continue the business of mining and shipping coal from the mine of the said Leccony Smokeless Coal Company, located at Besoco, as aforesaid, until the property can be sold, or for any other length of time, to the prejudice of the rights of your respondent as the Lessor of said Company, or to the prejudice of the rights and remedies of your respondent, or to prevent your respondent from exercising its rights for the collection of rents, royalties and taxes owing and due, or to become due to it from the said Leccony Smokeless Coal Company under the terms and provisions of the said Indenture of Lease, and Supplemental Lease, dated June 8, 1925, and July 1, 1930, respectively, and your respondent avers that the operation of the business of mining and shipping coal by the said receivers from the mine of the Leccony Smokeless Coal Company, if done at all, must be done subject and subordinate in all respects to all liens heretofore accrued, and to hereafter accrue, to your respondent, and to all rights and remedies

of your respondent as Lessor of the said Leccony Smokeless Coal Company for the collection of rents, royalties and taxes heretofore accrued, or hereafter accruing, under any and all of the Leases, Supplemental Leases and Agreements held·by the said Leccony Smokeless Coal Company as Lessee of your respondent, on lands and interests in lands situated in Raleigh County, West Virginia, and described in such Leases, Supplemental Lease and Agreements."

The answer prays that there be decreed to it, as rentals and royalties which accrued during the months of January to December, both inclusive of the year 1938, the sum of $20,105.49, and the sum of $1,544.04 for the first half of the taxes for the year 1939 paid by it under the terms of its leases, which two claims aggregate the $21,649.53 mentioned above. This pleading will be searched in vain for any claim or suggestion that any rights are asserted against the lessee, or its receivers, other than those provided for in the two lease-agreements on which appellant's claim is based.

On March 7, 1939, the cause was referred to a commissioner in. chancery, who was directed to ascertain the personal property owned by the coal company, and the liens thereon with their priorities; the real estate with the liens thereon and the priorities thereof; the property and assets of the coal company at the time of the appointment of the special receivers; to make settlement of the administration and management of the properties of the coal company by its special receivers; and directed to report all claims, debts or demands owed by it or asserted against the Coal Company, to· whom payable, their nature and respective priorities. Acting under this order, the commissioner made up and filed his report on' the 18th day of May, 1939. The appellant herein appeared before the Commissioner and filed its claim, which included not only the amount due it as rentals, royalties and taxes to the date of the appointment of the special receivers, but the further sum of $3,088.08 for taxes paid and the further sum of $4,998.31 representing royalties due for coal ac-

tually mined from the leased premises by the special receivers, subsequent to December 15, 1938, and combining said claims into an aggregate of $28,202.74, which amount the commissioner reported in its favor, and which sum was reported as a lien upon the property of the coal company next after payment of *ad valorem* personal property taxes for the year 1939, aggregating $1,346.72. Appellant did not except to this report. The state tax commissioner did except thereto, on the ground that the sum due to the State of West Virginia, for indirect taxes, should have been decreed a prior lien over the amount reported to the appellant, which exception was overruled. On May 31, 1939, a decree was entered in favor of the appellant for the sum of $28,202.74, as a second lien on the personal property of the coal company, and subject only to personal property taxes for the year 1939, decreed as the first lien. A motion was made by the United States of America and others to recommit the cause to the commissioner, and to set aside the decree last above detailed, on June 3, 1939, which motion the court took time to consider, reserving to itself the right to modify, amend, vacate or alter the said decree at any regular or special term of court thereafter. The motion so made was withdrawn on August 23, 1939, and a decree then entered ratifying and confirming the said decree of May 31st. From this decree an appeal was prosecuted by the tax commissioner to this court, resulting in a reversal thereof, to the extent of holding that all taxes reported to the state tax commissioner were prior in point of priority to the claim theretofore presented by the appellant. *Moran* v. *Leccony Smokeless Coal Co.*, 122 W. Va. 405, 10 S. E. (2d) 578, 136 A. L. R. 1007. Certiorari to the Supreme Court of the United States was refused, 311 U. S. 714, 85 L. ed. 465. Following these actions by this Court and the Supreme Court of the United States, the case was returned to the Circuit Court of Raleigh County.

On May 10, 1941, the appellant filed its petition setting up a claim in the sum of $18,621.07, as of the 23rd day of August, 1939, on account of what it terms irreducible minimum annual rental of ten dollars per acre on 2,493.76

acres of coal leased by it to Leccony Smokeless Coal Company, by lease dated June 16, 1925, and supplemental lease of July 1, 1930, and in which it contends that the same should be decreed to it as an expense of the receivership, payable out of funds in the hands of the court derived from the sale of the property and assets of the coal company. It should be here noted that the property and assets of the coal company had, at the date of the filing of said petition, been sold by special commissioners appointed by the court for that purpose, and purchased, in the first instance, by appellant for $37,500.00, which purchase it assigned and transferred to Leccony Smokeless Fuel Company, a new corporation apparently organized for the purpose of succeeding to the operations of Leccony Smokeless Coal Company. To this petition demurrers and answers were filed by the state tax commissioner, who relied upon the effect of the holding of this Court, giving to the State of West Virginia a priority of lien for taxes. The cause was then referred to a commissioner, ostensibly to ascertain liens against the fund in the hands of the special commissioners, who reported appellant's claim as the sum of $18,054.97 as of June 17, 1941. He also made report of taxes which had accrued to the United States Government, and the State of West Virginia, during receivership, but did not pass upon the priorities of the several sums reported as against the fund in the hands of the court derived from the sale of the coal company's property. On August 8, 1941, the final decree was entered in the cause, directing the disbursement of such fund. By this decree said fund was directed to be distributed in the following order of priority: First, costs of suit to be taxed by the clerk, including expenses of commissioner's report; second, claims of certain employees for guarding and protecting the property of the coal company during the receivership; third, the sum of $2,441.61 to the United States Government, and the sum of $4,214.18 to Leccony Smokeless Coal Company, being the amount paid by it to the United States Government in compromise of tax lien, which compromise was ratified by the court; fourth, to the state tax commissioner the

aggregate sum of $12,159.69, representing taxes due the State of West Virginia, including $2,118.66 which had accrued during the receivership; and, fifth, the sum of $18,054.97 to appellant, Piney Coking Coal Land Company. It is from this decree, which subordinates the lien in favor of the appellant to the sums directed to be paid to the United States Government and the Leccony Smokeless Coal Company on account of Federal taxes, and to the sum directed to be paid to the state tax commissioner that the appellant prosecutes this appeal.

The most important, and perhaps the decisive, question on this appeal is the weight to be given to the decree of August 23, 1939, as modified on appeal to this Court. By that decree the appellant herein was given the first lien, after costs and expenses of the receivership and property tax on personalty were paid, for the full amount of its claim, including royalties accrued for coal actually mined under the receivership up to the date of the commissioner's report on which said decree was based. As modified by this Court, the lien decreed to the appellant was subordinated to the liens of the United States Government and the State of West Virginia for taxes. Prior to the entry of that decree, as indicated above, the appellant filed its answer, asserted its claim and based its right to priority on the terms of the lease under which its claim was asserted. No distinction was made between rents accruing under its leases before the receivership and those accruing while the same was in effect. It is clear that, under the scope of the pleadings, any claim for priority could have been asserted, but appellant elected to rely on the lien provided for in its leases, which, if we except costs and expenses of receivership and property tax, would have been a valid first lien, had it not been for the assertion of the sovereign rights of the State and Federal Governments to make their liens superior to those held by private interests. Under these circumstances the question naturally arises whether or not the rights of the parties, as finally fixed by the lower court and this Court, are not determinative of the question involved on this appeal.

One of the landmarks of the law is that a case once determined in a court of competent jurisdiction can not, as between the same parties, afterwards be retried. However, this is not a case where the rule of res adjudicata applies. That rule, as we understand it, is applied in situations where there has been a determination of a given question in a case once decided, and it is sought to re-try the same in another proceeding. The rule is hedged about somewhat by requiring the new proceeding to involve the same parties, but once these requirements are met, it is strictly applied, and there can not be a re-hearing of the question once decided, nor can there be a re-trial of any question which might have been asserted in such former suit or action, within the scope of the pleadings therein. Out of this rule has developed another rule, equally effective and necessary to the settlement of litigation, particularly applicable to decisions of this Court, and that is, that the findings of this Court upon a question decided by the lower court, and presented here for review, are final, and that upon the second appeal or writ of error questions decided on the former review will be treated as the law of the case, unless new pleadings and new evidence adduced on the subsequent trial call for a different judgment. *Beecher v. Foster*, 66 W. Va. 453, 66 S. E. 643; *Keyser Canning Co. v. Klots Throwing Company*, 98 W. Va. 487, 128 S. E. 280; *Leitch v. Chesapeake & Ohio Ry. Co.*, 101 W. Va. 230, 133 S. E. 140; *Hager v. Standard Island Creek Coal Co.*, 112 W. Va. 479, 164 S. E. 666; *Keller v. Norfolk & Western Ry. Co.*, 113 W. Va. 286, 167 S. E. 448.

Then, too, another rule bearing upon this case is that "A party to a suit may not assume inconsistent positions therein." *Clay County Bank v. Wilson*, 109 W. Va. 684, 158 S. E. 517. See also *MacDonald v. Long*, 100 W. Va. 551, 131 S. E. 252; *Ealy v. Shelter Ice Cream Co.*, 110 W. Va. 502, 158 S. E. 781; *Koon v. Monongahela West Penn Public Service Co.*, 119 W. Va. 76, 77, 192 S. E. 332; *Litz v. First Huntington National Bank*, 120 W. Va. 281, 197 S. E. 746. That there is inconsistency as between the position which the appellant now takes, and that asserted when it first presented its claim, is apparent.

But appellant says that by our first decision in this case, *Moran* v. *Leccony Smokeless Coal Co.,* 122 W. Va. 405, 10 S. E. (2d) 578, 136 A. L. R. 1007, we held that in a suit for the appointment of a receiver, costs and expenses of the receiver might be decreed by the court to be paid out of the fund or property within its custody, and it says that under this holding it now has the right, notwithstanding its former position, to assert a claim for rents and royalties accruing under its leases during the receivership as a part of the expenses thereof. It further contends that under its leases it could not assert its claim for minimum rentals until after the end of the year 1939, because not due until January 15th following. While we do not say that the court below was limited in decreeing payment of receivership expenses to those incurred prior to its decree of August 23, 1939, for the reason that other expenses might reasonably accrue, such as guarding property, taxes and other legitimate expenses, yet we do think that the action of the court in determining what should constitute receivership expenses, among the claims asserted, was final. To illustrate, certain receivership expenses were paid, such as salary of the receiver, taxes, and other expenses connected with the care and preservation of the property, but rents and royalties on which appellant's claim is based were not decreed as expenses of receivership, but were decreed as a lien under the provisions of the two leases set up in the pleadings. If it was intended to assert a claim for such rents and royalties, as an expense of the receivership, the case was open for that purpose and the claim should have been made. The claim not being made, and the lower court decreeing on appellant's claim under the leases, and this Court recognizing such claim, except as to the superior right of the State of West Virginia, that matter was, we think, conclusively determined, and appellant could not change its position and assert a new claim to the prejudice of those who acquired rights under the former decree. There would be no end of litigation if such a course should be approved by this Court. We dismiss the contention that minimum annual rentals under the lease could not have been asserted prior

to January 15, 1940, with an expression of our fixed belief that able counsel would have found no difficulty in protecting their client in that aspect of the case, had it occurred to them that a claim for such rentals, as an expense of the receivership, could be sustained at any time.

But even if such a claim could be asserted at this time, the claim of the appellant can not, in our opinion, be classed as cost and expenses of the receivership. At most it should be charged as cost of operation under the receivership. The appellant attempted to protect its interest in the order appointing the receivers. Therein it was provided that rentals and royalties, accruing for coal actually mined thereunder, should be paid out of funds derived by the receivers from the operation of the mines and the sale of coal. The money so received by the receivers was directed to be deposited in a bank, and among the expenses of operation they were authorized to pay therefrom were the royalties accruing for coal actually mined. With these provisions in the decree, the appellant, as lessor, was apparently willing that the operation of the mines should continue. True, there was an injunction against interference with the property in the custody of the court, but that injunction did not prevent the appellant from presenting to the court in the pending suit, its claims under its lease, and by proper action therein assert its right to forfeit its leases and to repossess its property. Had such a step been taken, no doubt a more definite provision would have been made for the payment of rents and royalties, or the operations would have ceased, and the lessor been permitted to forfeit its leases under their terms. The lessor stood by and allowed the operation to continue, and took the risk of collecting from the receivers the royalties accruing for coal actually mined under their operations, as well as all other rents and royalties accruing under said leases.

Costs and expenses of receivership are generally limited to taxes and those costs and expenses necessary to preserve the estate for the benefit of all persons interested, and are payable, primarily, out of the fund in the hands of the receiver, but, if necessary, out of the corpus of the

estate in the custody of the court. The prestige and dignity of the court is involved in seeing that expenses incurred under its direction are paid; otherwise it would be loathe to take charge of property under a receivership in any case. But this does not mean that the court can operate the property through a receiver, and through such operations encroach upon the rights of creditors, especially lienholders, by charging the expenses of such operations to the corpus of the estate by which such liens are secured. It is different in cases of the receivership of public utility corporations, where operation is required in the public interest, and in such cases the cost of operation may be paid out of the corpus of the property. In many instances, rents may be treated as expenses of receivership, depending upon the circumstances. In *Kanawha National Bank* v. *Blue Ridge Coal Corporation*, 107 W. Va. 460, 148 S. E. 474, a creditor was decreed compensation for use of his property, after having made objection to such use, but we do not think that where a lessor permits the operation of leased premises of the character here involved, to be continued under receivership, and where, as here, provision is made for the payment of royalties from incomes derived from the operations authorized, and where the decree of the court and lack of objection on the part of the lessor, creates privity of contract between the lessor and the receiver, the lessor can claim rents as receivership expenses. We think its claim is limited as to remedy by the terms of the lease. If it did not elect to permit such operation, it had the right, in the suit to object to the same and either secure the forfeiture of the lease, or a specific order of the court protecting it thereunder.

Concededly, there is some confusion as to when rents and royalties become a cost of receivership, and whether or not, in any case, operating costs may be treated as costs of receivership. A clear statement of the rule which should govern will be found in 53 C. J. 258, Section 430, which we quote:

> "The distinction between private enterprises and those vested with a public interest as governing the question of priority between liens and

operating expenses is generally recognized. By the great weight of authority, the claims and indebtedness of a receiver engaged in administering the affairs of an ordinary insolvent private concern for the expenses of carrying on and operating the business cannot be given priority over the claims of the mortgagees and lienholders to the corpus of the property, but are inferior and subsequent thereto in the absence of consent or estoppel affecting the lienor. They are, however, entitled to be first paid from the operating income, and if a part of the income is diverted, to the prejudice of such claims, in paying the expenses of administration or other secured claims, the debts incurred by the receiver in operation of the business are entitled to rank to the extent of such diversion as preferred claims in the place of those to which the income has been diverted. Payments made to lienors from the funds derived from the proceeds of the sale of the assets of the business are not, however, a diversion. Any balance of such operating expenses not covered by the income is entitled only to a ranking with the other unsecured obligations in the distribution of the proceeds. Where the concern in question performs some of the functions of a public service corporation, but its dominant character is that of a private business engaged chiefly in private pursuit, the rules of priority applicable to private, rather than those relative to public service, corporations are followed."

The appellant's claim is, of course, protected as a lien on the corpus of the estate under its lease, so that in no event can it be treated as a common creditor.

The record shows that subsequent to the sale of the property of the Leccony Smokeless Coal Company, and its acquisition by the Leccony Smokeless Fuel Company, the latter company made a compromise settlement with the United States of America for the taxes due it from the former company, and that certain payments were made by the Fuel Company to the United States Government, and that at the date of the decree of August 8, 1941, there had been paid by the Fuel Company, under such

compromise, a sum of money which, at the date of said decree, aggregated $4,214.18. In the decree now under review, this sum of money is decreed to the Leccony Smokeless Coal Company, the insolvent debtor, obviously an unintentional error on the part of the court below and counsel who, no doubt, prepared the decree. The pleadings and proof, as well as the memorandum of the trial judge made a part of the record, make it clear that this sum was intended to be decreed to the Leccony Smokeless Fuel Company under its alleged right of subrogation to the claim of the United States of America. Therefore, if a decree for $4,214.18 would be justified, the same would be entered here in favor of Leccony Smokeless Fuel Company instead of Leccony Smokeless Coal Company, and such a decree should be entered. However, there is a question as to the priority which should be allowed to the amount decreed.

When we go back to the decree of August 23, 1939, we find that there was a decree in favor of the United States of America for $15,547.72, but the lien securing this amount was made subordinate to the mortgage bonds and amount decreed to Piney Coking Coal Land Company, the appellant herein. The United States did not appeal from this decree, and it therefore became final as to it. Subsequently, the Leccony Smokeless Fuel Company compromised the claim of the United States for taxes, including those accruing under the receivership, for an agreed sum, and payments were made on account of such compromise, leaving a balance of $2,441.61 which has been decreed herein to the United States. The Fuel Company now claims to be subrogated to the right of the United States of America to the extent of the amount paid under such compromise. It seems clear that even if it be entitled to a decree for the sum so paid, and to be subrogated to the rights of the United States thereto, the rights of the subrogee can not extend beyond those of the subrogor. We have held the decree of August 23, 1939, to be a final adjudication of all matters therein dealt with, not reversed on appeal therefrom, and the United States of America having submitted itself to the Court, and

there being a decree prejudicial to its interests, with no appeal therefrom, we must likewise hold that it was bound by such decree, and that any one subrogated to its rights thereunder takes such rights only as were vested in it. The same principle governs as to the balance due the United States under the compromise agreement. The decree of $2,441.61 in its favor may have been for taxes accruing under the receivership, and, therefore, costs of receivership, but these taxes were not so asserted. The decree of August 23, 1939, is final on that point, and under it these taxes were merely decreed as a lien, not as costs of receivership. We can not see, therefore, how a decree in favor of the United States of America and the Leccony Smokeless Fuel Company, its subrogee, can now be upheld to the prejudice of either the holders of the mortgage bonds, or the appellant herein, who by a final decree, unreversed, were given a position superior in priority over the United States. The claim of the appellant under its leases being in our opinion superior to the rights of the holders of the mortgage bonds, the denial of priority as to the decrees of $2,441.61 to the United States and $4,214.18 to its subrogee inures, indirectly, to the benefit of the appellant. Under this view of the case, costs of suit and expenses of commissioner's report should first be paid; next the items of receivership cost for guarding the property; next the amount due the State of West Virginia; and the balance, if any, in the hands of the special commissioner, should be applied to the claim of the appellant under its lease, whether represented by the claim asserted as costs and expenses of receivership, or its claim accruing prior thereto. Appellant contends that the lien of the bondholders is superior to the lien of the United States Government, but in view of our holding it is unnecessary to pass upon that question.

Believing first, that the appellant's claim to priority over the lien of the State of West Virginia for taxes is foreclosed by the former decree of the lower court, as interpreted and modified by this Court, and, second, that, as an original proposition, in the circumstances of this case, the appellant is not entitled to assert a claim for rents and

royalties under its leases, as costs and expenses of receivership, but only as operating expense, and under the provisions of its leases, the decree of the Circuit Court of Raleigh County will be affirmed so far as it fixes the priority of the decree in favor of the State of West Virginia, with costs to the State. So far as the said decree gives priority to the decree of $2,441.61 to the United States of America and $4,214.18 to Leccony Smokeless Fuel Company, its subrogee, the same is reversed. The case is remanded to the Circuit Court of Raleigh County with direction to enter a decree, directing a distribution of the funds in the hands of the special commissioner, first to the payment of the costs of suit, including expenses of commissioner's report; second, unpaid expenses of receivership as herein defined; third, the amount decreed to the State of West Virginia; and the balance, if any, as a credit on the claim of the appellant herein.

There was filed along with the other briefs in this case, a brief on behalf of Claude Jarrett, Receiver, complaining of the refusal of the trial court to make certain allowances to him as compensation as such receiver. We have not considered this brief because no appeal is pending in this Court on the part of Jarrett, and the appeals granted from said decree do not permit us to consider the Jarrett claim. Any complaint with reference thereto must be presented to this Court by separate appeal.

*Reversed in part; affirmed in part.*